**WHITAKER–MERRELL COMPANY,**
**Plaintiff-Appellant,**

v.

**PROFIT COUNSELORS, INC.,**
**Defendant-Appellee.**

No. 83–3869.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 16, 1984.

Decided Nov. 26, 1984.

Richard A. Frye (argued), Knepper, White, Arter & Hadden, Columbus, Ohio, for plaintiff-appellant.

John H. Burtch (argued), Baker & Hostetler, Terence P. Kemp, Columbus, Ohio, for defendant-appellee.

Before MARTIN and JONES, Circuit Judges, and WEICK, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

This is a diversity action for breach of contract and negligence. Whitaker-Merrell is engaged in the construction industry in Columbus, Ohio. Much of its work is obtained through the public competitive bidding process. Profit Counselors operates as a professional business consultant. Whitaker-Merrell brought this action for damages sustained as a result of its reliance on an overhead allocation system designed by Profit Counselors. At the close of Whitaker-Merrell's case, the court directed a verdict for Profit Counselors. We affirm.

Whitaker-Merrell prepared its bids for construction projects by estimating costs for materials and labor. To its labor and materials cost Whitaker-Merrell would add an amount to recover its overhead. This amount, expressed as a percentage, was calculated separately for labor and materials.

Profit Counselors represented in its sales pitch that it could improve Whitaker-Merrell's job cost system, particularly the overhead allocation system. The parties entered into preliminary negotiations, exchanged letters, and eventually signed a written agreement on March 19, 1979. Using the overhead allocation method developed by Profit Counselors and the exact percentage mark-ups supplied by an employee of Profit Counselors, Whitaker-Merrell bid and received fifty-seven construction projects. In June 1980, Whitaker-Merrell's in-house accountant informed management that the percentage mark-ups provided by Profit Counselors were too low. The accountant calculated that the error had prevented Whitaker-Merrell from recovering $177,000 in overhead in the fifty-seven jobs.

In response to Whitaker-Merrell's claim for damages, Profit Counselors contended in the district court that the written contract between the parties obligated Profit Counselors only to develop an overhead allocation method, not actual percentage mark-ups to be used in bidding. Profit Counselors claimed that the actual percentage mark-ups provided to Whitaker-Merrell by Profit Counselors were meant to be illustrative only.

Profit Counselors also claimed that Whitaker-Merrell had failed to prove the fact or amount of damage with reasonable cer-

tainty. Whitaker-Merrell introduced evidence of the next-lowest bid received for only seven of the fifty-seven disputed jobs. Profit Counselors contended that without this evidence there was no indication that Whitaker-Merrell would have been the lowest bidder if it had used the higher percentage mark-ups recommended by its in-house accountant.

Finally, Profit Counselors contended that the fact and amount of damage were too speculative because Whitaker-Merrell's bid price was not determined solely by using the labor and material costs and the percentage mark-ups. After reviewing the figure suggested by these objective factors, the president of Whitaker-Merrell, John Dornbusch, determined the actual bid price by considering a host of subjective factors. As a result of these subjective factors, Whitaker-Merrell bid some jobs at more than one hundred percent of cost and some jobs at less than cost.

After giving the jury its preliminary instructions, the court ruled that Whitaker-Merrell could not introduce any evidence to vary the terms of the parties' written agreement. The court found that the agreement required Profit Counselors to develop a method of overhead allocation, but not to provide actual percentage mark-ups. The court also found that the actual percentage mark-ups submitted to Whitaker-Merrell were meant to be illustrative only. At the close of Whitaker-Merrell's case-in-chief, the court directed a verdict for Profit Counselors on the ground that the contract required Profit Counselors only to provide a method for overhead allocation and that the evidence of the fact and amount of damage was too speculative. We affirm on the ground that the contract required Profit Counselors only to provide a method of overhead allocation and there is no evidence in the record that Profit Counselors breached its contract or tort duty to provide an adequate method. In light of this holding, we need not consider the adequacy of proof on the fact or amount of damage. We also need not consider Whitaker-Merrell's claim that the court erroneously permitted Profit Counsel-ors to introduce evidence of Whitaker-Merrell's overall profitability or its claim that the court erroneously excluded evidence of prejudgment interest.

The operative written agreement between the parties is an "Operating Agreement" signed by Mr. Dornbusch for Whitaker-Merrell on March 19, 1979. The Operating Agreement provides:

1. In the course of the work the client will be consulted concerning changes, recommendations or other action requirements. Written action reports covering the work done and work to be done will be submitted to the client. Recommendations to the client will be submitted in writing. No action report or recommendation, written or oral, shall be construed as expressing any opinion as to matters of law.

2. So that the services of Profit Counselors, Inc. are completely and at all times within the full control of the client, the Action Reports referred to in paragraph one will be accepted and approved by the client in writing. The client may specifically exclude any statement not approved.

.    .    .    .    .

11. Profit Counselors, Inc. and the Client accept this Operating Agreement as constituting the entire agreement between them with respect to all services to be rendered by Profit Counselors, Inc. to the client and its compensation therefor.

The first Action Report made pursuant to the Operating Agreement was approved by Mr. Dornbusch on May 4, 1979. That report provides:

The pursuits and objectives of the authorized project of "Cost Management" are presented hereunder:

.    .    .    .    .

E. Provide Overhead allocation *method* for

1. Erection Division.

2. Each of the four erection departments.

3. The job.

4. Applicable to material.

5. Applicable to direct labor.

(emphasis added).

The Action Report for the week of May 21, 1979 through May 25, 1979 provides:

The work of the elapsed week, consisted in the completion of the *calculations for determining:*

1. Overhead Allocation

(emphasis added).

Whitaker-Merrell argues on appeal that the court erroneously applied the parol evidence rule to exclude evidence which would show that the parties intended Profit Counselors to provide an overhead allocation method *and* actual percentage mark-ups. We disagree.

■ The parties agree that we should apply Ohio law to resolve the parol evidence issue. The Ohio courts have held that the parol evidence rule is not applicable when the parties' contract is ambiguous. *See Ohio Crane Co. v. Hicks,* 110 Ohio St. 168, 143 N.E. 388 (1924) (per curiam). Whitaker-Merrell employs two arguments to invoke this exception to the parol evidence rule. First, it claims that the Operating Agreement dated March 19, 1979 and the subsequent Action Reports do not constitute the parties' contract. The parties' contract, it is claimed, is a document titled "Project Authorization" dated March 22, 1979. That document lists the project to be carried out by Profit Counselors as "Cost Management-Construction." Whitaker-Merrell claims that those three words—Cost Management-Construction—constitute the heart of parties' contract and are ambiguous. This contention is wholly without merit. The Project Authorization explicitly states that it merely conveys "authority to begin the project development, listed below [Cost Management-Construction], in accordance with your Operating Agreement ... the provisions of which are mutually agreed to and understood." By its very terms the Project Authorization

merely authorized Profit Counselors to begin work in accordance with the Operating Agreement. The Project Authorization does not purport to supersede the terms of the Operating Agreement.

Second, Whitaker-Merrell argues that even if the Operating Agreement and subsequent Action Reports constitute the parties' contract, the term "method" used in the Action Report of May 4, 1979 is ambiguous. This amounts to an assertion rather than an argument because Whitaker-Merrell has not offered any reason why the word "method" is ambiguous. Indeed, its own expert witness testified that there is a clear difference between a method and a particular application of a method. He testified, "A methodology is a procedure. Results are what occurs after you run numbers through the procedure." The claim that the word "method" is ambiguous is without merit.

■ In addition to its claim that the contract is ambiguous, Whitaker-Merrell asserts that the parties' agreement is a mixed oral and written contract. For supprt, Whitaker-Merrell relies on *Arnold Palmer Golf Course v. Fuqua Industries, Inc.,* 541 F.2d 584 (6th Cir.1976). There we held:

Parties may orally or by informal memoranda, or by both, agree upon all essential terms of the contract and effectively bind themselves, if that is their intention, even though they contemplate the execution, at a later time, of a formal document to memorialize their undertaking.

*Id.* at 589 n. 3. *Fuqua Industries* is not controlling here. In *Fuqua Industries* we permitted the parties to introduce parol evidence to aid in the interpretation of a memorandum which stated that the parties would later reduce their understanding to a formal writing. *See id.* at 586. Here the parties executed a written contract which by its terms purported to fully integrate the parties' understanding. The parties were bound by a written contract, not a mixed oral and written contract.

The conclusion that the parties intended for Profit Counselors only to provide an overhead allocation method is supported by

the parol evidence that did make its way into the record. Before signing the Operating Agreement Mr. Dornbusch wrote Profit Counselors a letter asking, "Will you set up estimating *procedures* including direct labor costs, fixed and variable overhead, equipment costs, etc. for the separate departments (4) in our erection division?" (emphasis added). Additionally, on cross-examination Mr. Dornbusch testified that he understood that the Action Report of May 4, 1979 defined the scope of Profit Counselors' obligation:

Q. Didn't you understand that to mean, Mr. Dornbusch, that this [Action Report] was defining the scope of the project, the scope of the service that Profit Counselors was going to perform for you?

A. Yes, I did.

Finally, the complaint filed in the district court indicates that the contract between the parties was one to provide procedures, not results. Whitaker-Merrell alleges at one point in the complaint an essential element of the contract was that Profit Counselors would provide actual figures to be used in preparing bids. However, at another point the complaint states:

The contract provided for services which would correct the deficiencies identified by Defendant in its analysis, and the development by Defendant of a new, more effective cost management *system* for Plaintiff. To accomplish these results, Defendant agreed to furnish at Plaintiff's Columbus offices certain trained personnel, capable of performing various types of observation and review of financial records, operations and personnel. Defendant also agreed to review its agent's observations and conclusion with Plaintiff in Columbus, to custom prepare new accounting and *cost estimating procedures* for Plaintiff, *to train Plaintiff's employees in the proper use of such new procedures,* and to do other, related work. (emphasis added).

In sum, the court did not err in excluding parol evidence or in concluding that the contract obliged Profit Counselors only to provide a method for overhead allocation.

■ Once we have defined the scope of the duty owed by Profit Counselors, the question becomes whether that duty was breached. As an initial matter, the parties disagree whether the absence of a breach was set forth by the court as a ground for granting the directed verdict. The court explicitly found, "(1) the parties entered into a contract for the provision of certain management consultant services, among which was a provision of a method for the allocation of overhead costs...." The court further found, "(2) That defendant did furnish such a method...." Finally, the court discussed Whitaker-Merrell's failure to establish a causal relation between any breach and the amount of damage and then concluded: "[T]he Plaintiff has not established a prima facie case with respect to the damages claimed by reason of the use of the figures contained in [Profit Counselors's illustration of its method], both as to the fact of damages and the amount of damages." We think that the court's oral ruling on the motion for a directed verdict, together with its earlier ruling on the motion to exclude parol evidence, fairly indicate that absence of any breach of duty was an alternative ground for the directed verdict.

The court's conclusion that Whitaker-Merrell failed to establish a breach of duty is fully supported by the record. Whitaker-Merrell's expert witness testified on cross-examination that the method developed by Profit Counselors was an adequate one:

Q. Using methodology and results the way you have just defined them, do you have any quarrel—that's a bad word—do you find anything unsatisfactory about the methodology on [Profit Counselors' illustration of its method]?

A. The methodology on [Profit Counselors' illustration of its method] would, if used correctly, produce an acceptable means of allocating overhead.

Whitaker-Merrell's argument was premised on the notion that the parties' contract called for actual percentage mark-ups in addition to the development of a method. Because the court correctly concluded that the contract required Profit Counselors only to provide an acceptable method, the court correctly concluded that Profit Counselors did not breach its contract or tort duty.

■ Finally, Whitaker-Merrell argues that the court erred in accepting an *ex parte* trial brief from Profit Counselors. We agree that it is inconsistent with our adversary system for parties to submit and judges to accept *ex parte* trial briefs. Under our supervisory power we direct that no district court of this Circuit shall accept such a brief. *Cf. Photovest Corp. v. Fotomat Corp.,* 606 F.2d 704 (7th Cir.1979), *cert. denied,* 445 U.S. 917, 100 S.Ct. 1278, 63 L.Ed.2d 601 (1980).

■ Although we agree that the trial court's acceptance of the *ex parte* brief was improper, Whitaker-Merrell has pointed to no specific prejudice arising from the court's use of the brief. The brief dealt only in passing with the parol evidence issue; the bulk of the brief dealt with the issue of causation and damages—issues essential to neither the trial court's judgment nor our review. Whitaker-Merrell had a full opportunity to address the parol evidence issue and counsel conceded that "much evidence did find its way into the Record." The error in the court's acceptance of the *ex parte* brief was harmless. Fed.R.Civ.P. 61.

The judgment of the district court is affirmed.