SKINNER v SQUARE D COMPANY

Docket No. 127703. Submitted April 21, 1992, at Detroit. Decided
September 8, 1992, at 9:10 A.M. Leave to appeal sought.

Doris L. Skinner, for herself and as personal representative of the
estate of Chester W. Skinner, deceased, and Jeffrey W. Skinner
brought a products liability action in the Oakland Circuit Court
against Square D Company after Mr. Skinner was electrocuted
by a machine on which he had installed a switch manufactured
by the defendant. The court, Fred M. Mester, J., granted
summary disposition for the defendant, finding that the plain-
tiffs had not shown that the allegedly defective switch was a
proximate cause of the accident. The plaintiffs appealed.

The Court of Appeals *held:*

No genuine issue of material fact exists concerning whether
the alleged defect proximately caused Mr. Skinner's death.
Plaintiffs failed to advance a plausible theory regarding how
the allegedly defective switch caused the accident. The court
did not err in granting summary disposition.

Affirmed.

Michael J. Kelly, J., dissenting, stated that the plaintiffs
presented a plausible theory supported by testimony, exhibits,
and inferences that presented a question for the jury with
regard to the proximate cause of the accident. The court erred
in granting summary disposition.

1. Products Liability — Prima Facie Case — Causation.

A prima facie case for products liability requires proof of a causal
relationship between the defect and the damage of which the
plaintiff complains; a prima facie case does not require that the
plaintiff offer evidence that positively excludes every other
possible cause; it is enough if the plaintiff can establish a
logical sequence of cause and effect, notwithstanding the exis-
tence of other plausible theories that may have evidentiary
support.

References

Am Jur 2d, Products Liability §§ 224 *et seq.*.
See the Index to Annotations under Products Liability.

2. PRODUCTS LIABILITY — CAUSATION — BURDEN OF PROOF.

> The element of causation in a products liability action cannot be established solely on the basis of theory or conjecture; the plaintiff bears the burden of proving causation, and, where the matter of causation is one of pure speculation or conjecture, it is the trial court's duty to direct a verdict for the defendant.

3. PRODUCTS LIABILITY — CAUSATION — SUMMARY DISPOSITION.

> Mere conjecture regarding causation in a products liability action does not meet the burden of proof imposed on a party opposing a motion for summary disposition to come forward with documentary evidence indicating that a genuine issue of material fact exists (MCR 2.116[G][4]).

*Lawrence P. Nolan & Associates, P.C.* (by *Lawrence P. Nolan*), for the plaintiffs.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Barbara Hughes Erard* and *Susan Bieke Neilson*), for the defendant.

Before: JANSEN, P.J., and MICHAEL J. KELLY and GRIFFIN, JJ.

GRIFFIN, J. Plaintiffs brought this products liability action against defendant, Square D Company, following the death of plaintiffs' decedent, Chester W. Skinner. Mr. Skinner was electrocuted by his own homemade tumbling machine on which he had installed a switch manufactured by defendant. Plaintiffs appeal as of right a circuit court order entering summary disposition in favor of defendant pursuant to MCR 2.116(C)(10). We affirm.

I

This is a tragic case. Plaintiffs' decedent was in the business of cleaning and finishing metal parts. To this end, Mr. Skinner routinely used a homemade tumbling machine that he had designed and

built himself. Essentially, the machine consisted of a large metal drum mounted on a frame. Rough metal parts were placed inside the drum along with a quantity of abrasive detergent. An electric motor then rotated the drum in one direction to wash the parts. After allowing the drum to rotate for a period of time, the operator would reverse the direction of the tumbler and the finished parts would be ejected from the drum.

Because of the way Mr. Skinner had designed the machine, reversing the direction of the drum's rotation was a dangerous task. The motor that turned the drum was controlled by a switch manufactured by defendant. Mr. Skinner had connected the Square D switch to the motor by using three wires with insulated "alligator clips" on the ends. In order to reverse the direction of the machine, the operator was required to disconnect two of the alligator clips from the motor by hand and reverse them. For obvious reasons, it was important for the operator to make sure that the Square D switch was in the off position before disconnecting the wires from the motor.

On February 21, 1986, Mr. Skinner was in his shop, working in the room with the tumbling machines. Mrs. Skinner and two other women, Beulah McBride and Violet Whiting, were in another room, racking parts. Suddenly, the women heard Mr. Skinner cry out. They ran into the room where Mr. Skinner was, and found him standing with his hands above his head, each hand grasping an alligator clip. Electric current was passing through Mr. Skinner's body. Aware of what was happening, Mr. Skinner cried out to the women, "don't touch me"! He then freed his left hand from the alligator clip and reached for the Square D switch. Mr. Skinner threw the switch into the off position, twisted, and fell over dead.

II

It is plaintiffs' theory in this case that a defect in the design of the Square D switch proximately caused Mr. Skinner's electrocution. Plaintiffs allege that the switch was defective because it had a large "dead zone" that allowed the switch to be positioned in such a way that it would appear to the operator to be off when it was actually on.

Defendant argues, and the trial court agreed, that even assuming the switch was defective, there is no evidence that Mr. Skinner was actually confused or misled by the position of the switch at the time he was electrocuted. Thus, defendant submits, no genuine issue of material fact exists concerning whether the alleged defect proximately caused Mr. Skinner's death. After a thorough review, we are constrained to agree with defendant's argument.

It is well established in Michigan law that a prima facie case for products liability requires proof of a causal relationship between the defect and the damage of which the plaintiffs complain. *Mulholland v DEC Int'l Corp,* 432 Mich 395, 415; 443 NW2d 340 (1989). It is also true that a prima facie case does not require that a plaintiff offer evidence that positively excludes every other possible cause. Rather, it is enough if the plaintiff can establish a logical sequence of cause and effect, notwithstanding the existence of other plausible theories, although other plausible theories may also have evidentiary support. *Id.*

The element of causation, however, cannot be established solely on the basis of theory or conjecture. *Jordan v Whiting Corp,* 396 Mich 145, 151; 240 NW2d 468 (1976). It is the plaintiff who bears the burden of proving causation, and where the matter is one of pure speculation or conjecture, it

becomes the duty of the trial court to direct a verdict for the defendant. See *Mulholland, supra* at 416-417, n 18, quoting Prosser & Keeton, Torts (5th ed), § 41, p 269. Similarly, mere conjecture does not meet the burden of proof imposed on a party opposing a motion for summary disposition to come forward with documentary evidence indicating that a genuine issue of material fact exists. *Little v Howard Johnson Co,* 183 Mich App 675, 683; 455 NW2d 390 (1990).

Applying these principles to this case, we are persuaded that the trial court did not err in granting defendant's motion for summary disposition. Throughout this litigation, both sides have advanced various theories regarding how the accident occurred. However, at no time did plaintiffs advance a plausible theory regarding how the defective switch caused the accident. We agree with the following observations contained in defendant's brief:

> Throughout the course of this litigation, plaintiffs have failed to appreciate that their burden is not simply to produce evidence that the switch could possibly, theoretically be confusing to someone at some time. They must produce evidence from which a jury could reasonably conclude that Mr. Skinner was in fact confused by the Square D switch on the machine he was operating just before he was electrocuted and that this confusion led to his death. See . . . *Derbeck v Ward,* 178 Mich App 38, 44 [443 NW2d 812] (1989); and *Jubenville v West End Cartage, Inc,* 163 Mich App 199 [413 NW2d 705] (1987).
>
> The absurdity of plaintiffs' confusion theory is exposed as soon as one realizes that the operator of the tumbling machine did *not* depend upon the way the switch handle appeared to determine whether the machine was "on" or "off." Even if Mr. Skinner pushed the handle of the switch

incompletely or even if it somehow teased its way into an ambiguous position, Mr. Skinner could not have thought the machine was off if in fact it was still running! The noise of the tumbler barrel and the motor is deafening and the motion of the barrel is continuous. Thus, even if Mr. Skinner were careful and tried to turn the machine off before unfastening and refastening the alligator clips, he *would have had to have known* that the switch had not turned the power off because the machine would still have been running. He could not have ignored the roar of the motor and overlooked the tumbler as it turned continuously directly in front of him! [Emphasis in original.]

The scenarios advanced by plaintiffs in an attempt to establish causation are well characterized by defendant as "Agatha Christie theories." We acknowledge that proximate cause is usually a question of fact and that summary disposition is appropriate only in exceptional cases. See *Derbeck v Ward, supra.* In this case, we have carefully reviewed all plaintiffs' scenarios and find none to be supported by fact or reason. Without a plausible theory of causation, plaintiffs' claim must fail and summary disposition is warranted. For this reason, we conclude that the trial court did not err in granting defendant's motion for summary disposition.

III

We turn now to plaintiffs' remaining arguments on appeal. Plaintiffs next contend that the trial court erred in granting defendant summary disposition without ruling specifically on plaintiffs' separate claims of failure to insulate and failure to warn. We disagree.

Plaintiffs argue that the Square D switch was defective because it was not made of insulated

material and that there is evidence that this defect contributed to Mr. Skinner's electrocution. We find this argument disingenuous and accordingly reject it. It does appear that the experts agree that when Mr. Skinner grabbed the switch, he provided a secondary ground for the current that increased the magnitude of the shock he received. The testimony relied on by plaintiffs, however, does not indicate that it was only at that instant that the shock became fatal. Contrary to plaintiffs' assertion, Dr. Klingler, a witness for the plaintiffs, did not conclude that it was the act of shutting the power off that caused Mr. Skinner's death:

> *Q. [attorney for the defendant]*: Is it your opinion that if the operating mechanism on this switch had been insulated, that Mr. Skinner would not have been electrocuted?
>
> *A. [Dr. Klingler]*: I just don't know. He may have received an extreme shock. He may still have been electrocuted.
>
> I don't know. I can't say about that.

Dr. Klingler also admitted that his testimony was speculative. When asked if Mr. Skinner could have been electrocuted before he had a chance to reach for the switch, Klingler replied, "Oh, sure." Similarly, the pathologist who conducted an autopsy, Dr. Kallet, testified that Mr. Skinner had already completed the circuit by the time he grabbed for the switch, with the current entering his right hand and exiting through the balls of his feet. We find no basis for relief on this issue.

Finally, plaintiffs contend that a question of fact exists regarding whether defendant was negligent in failing to place a warning label on the defective switch box. Our finding that plaintiffs have not shown that the defect was a proximate cause of the accident renders this issue moot.

Affirmed.

JANSEN, P.J., concurred.

MICHAEL J. KELLY, J. *(dissenting)*. I respectfully dissent.

It does not require citation of authorities to posit that in Michigan the red-, black-, bold-letter law with regard to proximate cause is that it is a question of fact to be decided by a jury. Doubts about remoteness, intervening acts, and superseding causes almost invariably present questions for the jury. There are two exceptions: when reasonable minds cannot differ, and when the relation between the defect and the injury involves mere conjecture, not reasonable inference. Only in such cases does proximate cause become a question for the court.

In this case, the majority adopts defendant's arguments in its brief to the effect that Mr. Skinner could not have been misled by the ambiguity of the switch, because the machine was on and was therefore rotating, and the motor was so loud that plaintiffs' decedent *could not have thought the machine was off*. Such claims are fact-dependent and fact-disputed. We are not reviewing a trial. This was a summary disposition. If the trial court had viewed the evidence in the light most favorable to plaintiffs, then the majority would not have been misled by defendant's brief into assuming that this cumbersome, Rube Goldberg machine was rotating, tumbling, and roaring at the critical time when plaintiffs' decedent was engaged in his usual, customary, and normal procedures for reversal of the drum rotation. Reversal of rotation of the drum was a three-step process. First, the electric power to the motor had to be cut off using the switch manufactured by defendant. Next, two of

the three wires that ran to the motor had to be reversed. A three-phase power source was used and three wires ran from the switch. At the end of each wire was an insulated "alligator clip." Each clip would be attached to one of the three leads from the motor. In order to reverse the motor, two of the three clips would be reversed on the leads from the motor. As the third and final step, the switch would be thrown back to the on position for current to flow to the motor and turn the drum. The only testimony with regard to Mr. Skinner's activity in that regard was from his own employees who testified that Mr. Skinner had the reputation of being careful around the shop, and that he always shut off the switch before he reversed the alligator clips.

In *Mulholland v DEC Int'l Corp*, 432 Mich 395, 415; 443 NW2d 340 (1989), the Supreme Court stated:

> A plaintiff in a product liability action need not offer evidence which positively excludes every other possible cause. It is enough that the plaintiff establishes a logical sequence of cause and effect, notwithstanding the existence of other plausible theories, although other plausible theories may also have evidentiary support.

Neither defendants nor the majority have obviated plaintiffs' theory and the inferences to be drawn from the testimony of the plaintiffs' witnesses. It was plaintiffs' theory that Mr. Skinner looked at the switch and, because of its ambiguous position, believed it to be off. He then grasped the clips and was electrocuted because the switch was, in fact, on. To be sure, there are inconsistencies in the testimony of the witnesses. The witnesses did not make clear whether the machine was operating after the Skinners returned from dinner, but it

was clearly established by experts for both parties that the power could be on with the switch in an ambiguous position, the tumbler not turning, and the motor not running, because the reversible wires were disconnected. Those are the wires that decedent was holding onto when the witnesses responded to his screams. It does not take a journeyman electrician, let alone a distinguished professor, to make sense of that possible occurrence.

At the hearing with regard to the motion for summary disposition, defendant's attorney admitted, for purposes of the hearing, that the switch was defective. Until that time, plaintiffs' heavy guns were loaded to show a defect. The trial court was misdirected into deciding a question of fact concerning contributory or comparative negligence that, although the court might be very apt at anticipating a jury decision regarding the question, was inappropriately decided. The motion was decided by the trial court over the telephone, and it ruled:

> Plaintiff has produced no evidence to show a specific fact issue to support his theory that the switch somehow caused plaintiff's decedent's death.

Although pictures of the switch and of the tumbling machine were part of the trial exhibits, it is obvious that the trial court did not have the benefit of the demonstration of the ambiguity of the Square D on-off switch handle that was presented to this Court at oral argument. Ambiguous is a bull's-eye description of that switch handle. Plaintiffs presented a plausible theory supported by the testimony, exhibits, and inferences that presented a question for the jury. It was not for the trial court to decide "the responsibility of the

Square D Company in regards to this." Proximate cause is a question for the jury.

Recently, in *Hickey v Zezulka (On Resubmission),* 439 Mich 408; 487 NW2d 106 (1992), the Supreme Court held that a Michigan State University Department of Public Safety officer charged with negligence and civil rights violations was entitled to a comparative negligence charge regarding the jail suicide of the plaintiff's decedent.[1] I do not analogize that Mr. Skinner was guilty of an intentional wrongful act such as was Mr. Hickey, but the trial court's encroachment on the jury's prerogative in this case seems to posit some such intentional and wilful misconduct. It is of course contrary to the testimony of the plaintiffs' witnesses and, in fact, construes the defendant's claims in the light most favorable to defendant. Defendant's alternative claims were that Mr. Skinner, somehow in the process of climbing up or down off a pallet, slipped and fell, grabbing the hot wires or that he was trying to reverse the direction of the tumbling machine without first turning off the power. Neither of those theories relies on the motion-commotion noise influence relied on by the majority. The parties deposed five experts, each of whom testified with regard to his theory of the circumstances surrounding Mr. Skinner's fatal accident. In three of those theories there is support for plaintiffs' position that the physical circumstances combined with the admittedly defective, ambiguous, switch to present a paradigm accident waiting to happen. Questions of proximate cause and comparative negligence were for the jury.

I would reverse.

---

[1] "[P]laintiff's complaint alleged negligence, gross negligence, and intentional and grossly negligent acts in violation of Hickey's civil rights under 42 USC 1983." *Hickey, supra,* 417.