AMERICAN & FOREIGN INSURANCE COMPANY, Plaintiff–Appellant,

v.

GENERAL ELECTRIC COMPANY, Defendant–Appellee.

No. 93–2044.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 9, 1994.

Decided Jan. 26, 1995.

Ralph H. Adams, Pasquale Ciccodicola (argued and briefed), Detroit, MI, for plaintiff-appellant.

Ernest R. Bazzana (argued and briefed), Boleslaus I. Stanczyk, Matthew Stanczyk, Plunkett & Cooney, Detroit, MI, for defendant-appellee.

Before: KEITH, JONES, and GUY, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

Plaintiff–Appellant American & Foreign Insurance Company (hereinafter, "American") appeals judgment for the defendant, General Electric (hereinafter, "GE"), in this products liability action. On appeal, American argues that the trial court erred by excluding its expert witness testimony, and that the lower court erred by granting GE's motion for a directed verdict. After reviewing the record before the lower court, we find no error in the lower court's decision to exclude portions of the expert's testimony or to direct a verdict in favor of GE.

## I.

On August 9, 1989, a fire broke out at Woodhaven High School in Brownstown Township, Michigan, damaging two rooms and causing severe smoke damage throughout the school. Total damages from the fire were $338,235.53. The school filed an insurance claim with American. American paid the claim and filed this action against GE in the Wayne County, Michigan Circuit Court. GE removed the action to the U.S. District Court for the Eastern District of Michigan pursuant to the court's diversity jurisdiction.

American's complaint alleged that the fire at Woodhaven High School was caused by numerous short circuit arcs within a wire mold plug strip, which set fire to various combustibles located in a custodians' room within the school. According to American, (1) GE was negligent in its design, manufacture, assembly, inspection, and testing of its model TQL amp circuit breaker—the safety device on the branch circuit powering the wire mold plug strip; (2) the circuit breaker was not reasonably safe for its intended use or foreseeable misuse because the devise could not provide protection against short circuit fires; and (3) GE was aware of the 20 amp circuit breaker's shortcomings but failed to take reasonable steps to warn its users and the public of the known dangers. American alleged that the failure of the circuit breaker was the proximate cause of the fire at the high school.

GE countered that the design of the circuit breaker was not defective and that it complied with all applicable standards regarding the design and manufacture of circuit breakers and their amplification. GE also raised the possibility that the fire was caused by the actions or activities of the school's employees and was already burning by the time the plug strip's wiring short circuited.[1] Thus, according to GE, the circuit breaker could not have prevented the fire.[2]

Prior to trial, the court apparently addressed and dismissed the design defect and failure to warn claims. *See* J.A. at 43. Those orders were not appealed. Accordingly, the only issue remaining at trial was American's manufacturing defect claim. After the matter was set for trial, GE filed three motions in limine, seeking, among other things, to exclude the testimony and opinions of Frederick Franklin, an electrical engineer, retained by American to assist in developing its case. A two and a half day evidentiary hearing was held to determine whether Franklin's opinions were reliable and relevant. During the hearing, Franklin was asked to produce all of his notes relating to the test itself and any protocol established for the test. Franklin responded that he had not established any protocol, that he had taken no notes during the testing, and that

---

[1]. The custodians' room was a smoking area. Fifteen minutes prior to the fire, three of the school's custodians had been smoking in the room. When deposed, however, one of the custodians denied that they had started the fire by careless smoking.

[2]. GE denied any negligence in design or manufacture. They also accused the school of comparative negligence, alleging (1) that the school lacked adequate fire prevention equipment, (2) the school had dismantled and negligently repaired or abused the plug strip, and (3) the school was not in compliance with the fire code. GE also alleged that American was negligent for not advising the school for the necessity of fire protection devices in the room where the fire occurred.

he had discarded the "raw data", *i.e.* the numbers he read on the oscilloscope screen. Franklin also testified that, although calibration of testing equipment was important to insure accurate readings, he was unsure whether his testing equipment had been calibrated. Finally, he testified that no one had witnessed the test and that the only evidence he had of the test was a single slip of paper consisting of a summary graph of the results. J.A. 324–28.

At the close of the hearing on GE's motion in limine, the court determined that, based on the testimony of the experts for both sides, Franklin's conclusions were not reliable. Accordingly, the court disallowed any references to Franklin's conclusions pursuant to Federal Rule of Evidence 702.[3]

Thereafter, American was permitted to go forward with any remaining evidence it had in support of its manufacturing defect claim. Jeremiah Dyer, a maintenance supervisor at the high school, testified by way of deposition that when the fire was extinguished, he checked the circuit breaker panel and found a circuit breaker that had not been tripped to the off position. Fire Inspector Jeffrey Droillard testified that immediately after the fire was put out, he began an investigation, and concluded that the cause of the fire was a short due to bad installation. Franklin was also recalled to testify with respect to issues not disallowed after the hearing on the motion in limine.

During the course of Franklin's testimony, the court *sua sponte* indicated that it would entertain a motion for directed verdict. Following a hearing on GE's motion for directed verdict, the court found that American's only evidence with respect to proximate cause was Franklin's testimony that there was a 50% chance, with a plus or minus 25% margin of error, that even if the circuit breaker had been manufactured as designed, it would have detected the short circuit and prevented the fire. Accordingly, the court entered a directed verdict in favor of GE. The court subsequently denied Plaintiff's motion for re-

consideration and a new trial. This appeal followed.

## II.

American argues that the lower court erred by excluding the testimony of its expert witness, Frederick Franklin, regarding the alleged design defect in the GE TQL 20 amp circuit breaker. A trial court "has broad discretion in the matter of the admission or exclusion of expert evidence, and [the court's] action is to be sustained unless manifestly erroneous." *Salem v. United States Lines Co.,* 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962); *United States v. Pearce,* 912 F.2d 159, 163 (6th Cir.1990), *cert. denied,* 498 U.S. 1093, 111 S.Ct. 978, 112 L.Ed.2d 1063 (1991).

### A.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 which provides the following:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

"Rule 702 should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact." *United States v. L.E. Cooke Co.,* 991 F.2d 336, 341 (6th Cir.1993). Until recently, this court used a four-part test to examine the admissibility of expert testimony: " '(1) a qualified expert (2) testifying on a proper subject (3) which is in conformity with a generally accepted explanatory theory (4) the probative value of which outweighs its prejudicial effect.' " *Id.* (quoting *Sterling v. Velsicol Chem. Corp.,* 855 F.2d 1188, 1208 (6th Cir. 1988)).

The Supreme Court recently modified the third criterion, holding that general acceptance is not an absolute prerequisite to admissibility. *Daubert v. Merrell Dow Phar-*

---

**3.** Apparently, after finding that his testing technique was unreliable, the court also excluded certain video tapes that Franklin made. It is unclear from the record exactly what information was contained on the video tapes.

maceuticals, Inc., —— U.S. ——, ——, 113 S.Ct. 2786, 2794, 125 L.Ed.2d 469 (1993). There, the Court found that "nothing in the text of [Rule 702] establishes 'general acceptance' as an absolute prerequisite to admissibility. Nor does respondent present any clear indication that Rule 702 or the rules as a whole were intended to incorporate a 'general acceptance' standard." *Id.* "[T]he requirement that an expert's testimony pertain to 'scientific knowledge' establishes a standard of evidentiary reliability." *Id.* at ——, 113 S.Ct. at 2795 (footnote omitted).

For purposes of Rule 702, "evidentiary reliability" means, essentially, "trustworthiness;" *i.e.,* "[i]n a case involving scientific evidence, *evidentiary reliability* will be based on *scientific validity.*" *Id.* at —— n. 9, 113 S.Ct. at 2795 n. 9 (emphasis in original); *United States v. Bonds,* 12 F.3d 540, 555–56 (6th Cir.1993). As the *Daubert* court noted,

The adjective "scientific" implies a grounding in the methods and procedures of science. Similarly, the word "knowledge" connotes more than subjective belief or unsupported speculation. The term "applies to any body of known facts or to any body of ideas inferred from such facts or accepted as truths on good grounds." Webster's Third New International Dictionary 1252 (1986). Of course, it would be unreasonable to conclude that the subject of scientific testimony must be "known" to a certainty; arguably, there are no certainties in science. "Indeed scientists do not assert that they know what is immutably 'true'—they are committed to searching for new, temporary theories to explain as best they can, phenomena." "Science is not an encyclopedic body of knowledge about the universe. Instead, it represents a *process* for proposing and refining theoretical explanations about the world that are subject to further testing and refinement." But in order to qualify as "scientific knowledge" an inference or assertion must be derived by the scientific method. Proposed testimony must be supported by appropriate validation—*i.e.,* "good grounds," based on what is known.

*Id.* (internal citations and parentheses omitted) (quotations and emphasis in original).

"[B]y defining evidentiary reliability in terms of scientific validity ... the *Daubert* Court has instructed the courts that they are not to be concerned with the reliability of the conclusions generated by valid methods, principles, and reasoning." *United States v. Bonds,* 12 F.3d 540, 556 (6th Cir.1993). Instead, "they are only to determine whether the principles and methodology underlying the testimony itself are valid." *Id.* Accordingly, under *Daubert,* in order to determine the admissibility of an expert's proffered testimony under Rule 702, trial courts must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert,* —— U.S. at ——, 113 S.Ct. at 2796. Key questions to be considered to determine whether a theory or technique is scientific knowledge that will assist the trier of fact include: (1) whether the hypotheses are falsifiable, refutable, or testable, *id.* at ——— ——, 113 S. Ct. at 2796–97; (2) whether the expert's theory "has been subjected to peer review and publication," *id.* at ——, 113 S.Ct. at 2797; and (3) "in the case of a particular scientific technique" the court "should consider the known or potential rate of error." *Id.* Finally, "general acceptance" can be taken into account.

A reliability assessment does not require, although it does permit, explicit identification of a relevant scientific community and an express determination of a particular degree of acceptance within that community. Widespread acceptance can be an important factor in ruling particular evidence admissible, and a known technique that has been able to attract only minimal support within the community may properly be viewed with skepticism.

*Id.* (internal citations and quotations omitted).

**B.**

■ We find that, although the lower court's judgment in this case pre-dated *Daubert,* the court clearly took into account all of

the relevant considerations required by that case. Our review of the record leads us to believe that American failed to establish that its expert's opinions were reliable or relevant scientific knowledge that was admissible under Rule 702. As the lower court explained,

> The expert retained in this matter has a theory relative to trip testing, trip time function and his theory that it should—these circuits breakers should trip more quickly. He has other theories about circuit breakers, but his theories are not yet accepted by the experts in the particular field concerned in this matter and his testing and his theory are not of a type reasonably relied upon by the experts in that field.
>
> Unfortunately, the expert's testing in this case, the court had to determine, was inadequate for the purposes of this trial. There's a real question about how he conducted his tests. The raw data was not preserved, his instruments were not calibrated. And all of it, I believe, was accomplished because he was advancing his theory and relying on substantial testing that had been done at other times for other purposes.
>
> But the burden is on the plaintiffs to persuade this court that the testing was reliable and supported by raw data.... Having paid careful attention to all of that the court had to find that the testing was inadequate.

J.A. at 41–42.

These findings of fact are not clearly erroneous. Accordingly, we are convinced that no abuse of discretion has occurred, and Franklin's testimony was properly excluded. *See Fleischut v. Nixon Detroit Diesel, Inc.,* 859 F.2d 26, 30 (6th Cir.1988) (stating that "district court abuses its discretion only when it relies on clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard"); *Davis v. Combustion Eng'g, Inc.,* 742 F.2d 916, 919 (6th Cir.1984).

### III.

American's second argument is that, even without Franklin's testimony with respect to the alleged design defect, the lower court erroneously granted GE's motion for a directed verdict. "In this Circuit it is well established that a federal court sitting in diversity applies the standard for a directed verdict used by the courts of the state whose substantive law governs the action." *Potti v. Duramed Pharmaceuticals, Inc.,* 938 F.2d 641, 645 (6th Cir.1991). Michigan law applies here, according to which, "[a] trial court may direct a verdict on an issue if the evidence, viewed in a light most favorable to the nonmoving party, fails to give rise to a material issue of fact upon which reasonable minds could differ." *Coffey v. State Farm Mutual Auto. Ins. Co.,* 183 Mich.App. 723, 455 N.W.2d 740, 742 (1990).

### A.

■ As an initial matter, American contends that under Federal Rule of Civil Procedure 50(a), a motion for a directed verdict can only properly be raised and granted (1) after the opening statement of an adverse counsel, if by such statement it is clear that no question for the jury exists; (2) at the close of the evidence offered by an opponent; (3) or at the close of all evidence. This position, however, is contrary to the plain language of Rule 50(a)(2) (1994) (stating that "[m]otions for judgment as a matter of law may be made *at any time* before submission of the case to the jury") (emphasis added). Nothing in Rule 50 or this circuit's case law requires that a motion for a directed verdict come at a specific time in the case. Moreover, here, pursuant to the court's powers under Rule 50(a), the court *sua sponte* indicated that it would entertain a motion for a directed verdict. This was clearly within the court's power. *See* Fed.R.Civ.P. 50(a)(1).

### B.

■ Next, American claims that, under Michigan law, it had made out a prima facie case of a manufacturing defect in the design of the 20 amp circuit breaker. To prove a manufacturing defect claim, a plaintiff must establish a causal connection between the claimed defect and the harm done. *See Caldwell v. Fox,* 394 Mich. 401, 231 N.W.2d 46, 50–51 (1975).

Causation cannot be established solely by conjecture, speculation, or surmise. *See Jordan v. Whiting Corp.*, 396 Mich. 145, 240 N.W.2d 468, 471 (1976). Like all elements of a civil action, causation must be established by the preponderance of the evidence. "Of all the elements necessary to support recovery in a tort action, causation is the most susceptible to summary determination...." *Davis v. Thornton*, 384 Mich. 138, 180 N.W.2d 11, 15 (1970). The question of whether sufficient evidence has been introduced to sustain a plaintiff's claim of causation is a question of law. *Detroit Bank & Trust Co. v. Michigan Dep't of State Highways*, 55 Mich.App. 131, 222 N.W.2d 59, 62 (1974).

Review of the trial record reveals that American can not, without speculation, establish a causal connection between a manufacturing defect and the fire. According to Franklin's testimony, under normal operating conditions, when arcing occurs, a circuit breaker should trip between 160 and 260 amps approximately 50 percent of the time, give or take 25 percent. In other words, even a non-defective circuit breaker had up to a 75 percent chance of not tripping during arcing. Plaintiff's evidence that a faulty circuit breaker caused the fire was highly speculative. Moreover, rather than supporting plaintiff's manufacturing defect claim, it establishes that it is *not* more likely than not that even a properly working circuit breaker would have prevented the fire.

Where the evidence indicates that it is as likely that the incident was caused by factors other than those asserted, a verdict for the defendant is mandated since otherwise a verdict would be based on speculation and conjecture. *Skinner v. Square D Co.*, 195 Mich.App. 664, 491 N.W.2d 648, 650 (1992), *aff'd* 445 Mich. 153, 516 N.W.2d 475 (1994); *Mulholland v. DEC Int'l Corp.*, 432 Mich. 395, 443 N.W.2d 340, 350 n. 18 (1989). For instance, in *Jordan v. Whiting Corp.*, 240 N.W.2d at 471, the Michigan Supreme Court reinstated a directed verdict in favor of defendants, stating that

> The sole evidence presented consists of expert testimony that a hypothetical person making simultaneous contact with a

live conductor in metal would have a seventy or eighty percent chance of extracting himself from that connection if the crane were grounded. *The mere possibility* that the defendant's negligence may have been the cause, either theoretical or conjectural, of an accident is not sufficient to establish a causal link between the two.

240 N.W.2d at 471 (emphasis added) (internal quotation marks omitted).

In the present case, American's proof established only *the mere possibility* that alleged manufacturing defect could have started the fire. Moreover, American failed to establish that the fire would not have occurred were it not for the alleged defect. Accordingly, the lower court properly found the expert's testimony regarding properly operating circuit breakers too speculative to support Plaintiff's claim that the circuit breaker's failure to trip proximately caused the fire. J.A. at 479. Because the evidence, viewed in the light most favorable to American, could not establish a causal connection between the circuit breaker's design or manufacturing and the fire at Woodhaven High School, we find that a directed verdict was required. *See Coffey*, 455 N.W.2d at 742.

### IV.

The directed verdict in favor of General Electric is AFFIRMED.