**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**BEAUTY ENTERPRISES, INC., Defendant.**

No. 3:01 CV 378(AHN).

United States District Court, D. Connecticut.

March 23, 2005.

See, also, 2002 WL 1626163.

Arnold J. Lizana, III, Markus Landon Penzel, Rosa Liliana Palacios, Equal Employment Opportunity Commission, Boston, MA, Katherine Bissell, U.S. E.E.O.C. N.Y.D.O., Evette Soto–Maldonado, Juan A. Figueroa, Puerto Rican Legal Defense & Education Fund, New York City, Barbara E. Gardner, Robert E. Byron, Jr., Manchester, CT, for Plaintiff.

Brian C. Roche, Pullman & Comley, Bridgeport, CT, Richard C. Robinson, Pullman & Comley, Hartford, CT, for Defendant.

### RULING ON DEFENDANT'S IN LIMINE MOTIONS TO EXCLUDE PLAINTIFF'S EXPERTS' TESTIMONY

NEVAS, Senior District Judge.

EEOC brings this action on behalf of twenty-three Hispanic individuals of Puerto Rican origin (collectively "Charging Parties"), and others similarly situated, alleging that defendant Beauty Enterprises, Inc.'s ("BEI") English-only workplace rule constitutes an unlawful employment practice and national-origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1), Title I of the Civil Rights Act of 1991, the Civil Rights Act of 1871, 42 U.S.C. § 1981, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen.Stat. § 46a–60(a)(1). BEI asserts that its policy of requiring its employees to speak only English while performing their jobs does not violate the employment discrimination statutes because the rule is justified by business necessity in that it eases ethnic tension and promotes safety in the workplace.

Pending before the court are BEI's in limine motions to preclude the testimony of EEOC's expert witnesses, Dr. Roseann Dueñas Gonzalez ("Dr.Gonzalez"), a linguist, [dkt. # 69] and Earnest F. Harper ("Mr.Harper"), a safety engineer [dkt. # 67]. For the following reasons, BEI's motions are both denied.

### BACKGROUND

For purposes of this motion, the court relies on the following factual background, which is based on the reports, affidavits, and the *Daubert* hearing testimony of Dr. Gonzalez and Mr. Harper, as well as the parties' legal memoranda.

BEI is a closely held, 30–year–old Connecticut corporation with its principal office in Hartford, Connecticut. It operates as a wholesale distributor of beauty products designed primarily for African–Americans and other ethnic minorities. In addition to its warehouse in Hartford, BEI has warehouses in Alabama, Michigan, New York, and Maryland. It employs a total of 325 people, approximately 150 of whom work at the Hartford warehouse on either a permanent or temporary basis.

In general terms, the job function of BEI employees is either to pull, check, pack, or ship cosmetic products that are stored on shelves, primarily by using an alphanumeric code that is assigned to each product. In particular, "order pullers" pull products that have been ordered according to a "pick list"; "order checkers" verify that the correct products have been picked; "order packers" consolidate the products into boxes for shipping; and, "palletizers" take the boxes to a shipping area.

BEI's warehouse employees are subject to an English-only workplace rule that requires them to speak only in English on company premises while working. The rule does not apply when employees are at lunch or on break, or when they are working off-premises. The rule has been in effect since around 1980, when some African–American employees accused some Hispanic employees of making derogatory comments about them in Spanish. It became a written policy in March 2001.

The Charging Parties, who oppose the rule, are twenty-three present or former BEI employees who work or worked at the Hartford warehouse and comprise approximately one-third of BEI's workforce at that facility. They are Hispanic, native Spanish speakers, and have varying degrees of English proficiency. All of the Charging Parties were educated in Puerto Rico, and, with one exception, were born there as well. Approximately one-third of the remaining employees are non-Spanish/non-English native speakers[1] and approximately two-thirds are English-only native speakers.

To support its claim of unlawful discrimination, EEOC relies, in part, on the opinions of Dr. Gonzalez, a linguist. According to Dr. Gonzalez, BEI's English-only rule unnecessarily and unfairly discriminates against the Charging Parties based on their Hispanic national origin. EEOC also relies on the opinions of Mr. Harper, a safety engineer, who opines that BEI's English-only rule is not necessary to promote workplace safety. BEI moves to exclude the testimony of these two witnesses on the grounds that it is not admissible under the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

## STANDARD

A district court's discretion to admit expert testimony is controlled by Fed. R.Evid. 702, 703 and 403. *See United States v. Dukagjini,* 326 F.3d 45, 51 (2d Cir.2003). Its decision to admit or exclude expert testimony may be reversed only on a finding of abuse of discretion. *See General Elec. Co. v. Joiner,* 522 U.S. 136, 142–43, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). In *Daubert,* the Supreme Court made clear that under Rule 702, district courts are charged with "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert,* 509 U.S. at 597, 113 S.Ct. 2786. *See also Wills v. Amerada Hess Corp.,* 379 F.3d 32, 48 (2d Cir.2004) ("the district court must consider both the reliability and relevance of the proffered testimony").

*Daubert's* reliability requirement "applies to all aspects of the expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia." *Pugliano v. United States,* 315 F.Supp.2d 197, 199 (D.Conn.2004) (quoting *Heller v. Shaw Indus.,* 167 F.3d 146, 155 (3d Cir.1999)). To decide whether an expert's analysis is reliable, the court must rigorously examine the data on which the expert relies, the method by which his or her opinion is drawn from applicable studies and data, and the application of the data and methods to the case at hand. *See id.* (citing *Amorgianos v. National R.R. Passenger Corp.,* 303 F.3d 256, 265 (2d Cir.2002)). "The proponent of the testimony must present enough evidence to demonstrate the scientific validity of the research supporting the conclusions so that the court can determine whether the testimony is well-founded." *Id.* "A minor flaw in an expert's reasoning or a slight modification

---

1. The non-Spanish/non-English native speakers are primarily Russian, Italian, Bangladeshi, Guyanese, Vietnamese, East Indian, and Polish.

of an otherwise reliable method will not render an expert's opinion per se inadmissible. The judge should only exclude the evidence if the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions." *Id.* (citing *Amorgianos,* 303 F.3d at 267).

■ The second part of the *Daubert* inquiry, relevance, asks whether an expert's scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. "As with any other relevant evidence, the court should exclude expert testimony if its prejudicial effect substantially outweighs its relevance. In addition, the district court should not admit testimony that is 'directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help.'" *United States v. Mulder,* 273 F.3d 91, 101 (2d Cir.2001) (citations omitted). *See also United States v. Hall,* 93 F.3d 1337, 1343 (7th Cir.1996) (reasoning that although "the district court is not compelled to exclude all expert testimony that may in some way overlap with matters within the jury's experience ... [i]f the proffered testimony duplicates the jury's knowledge, [then] Rule 403 might counsel exclusion ... to avoid the risk of unduly influencing the jury").

■ Also, because a portion of the Charging Parties' case rests on their assertion that the English-only rule has a disparate impact on them because of their Hispanic national origin, it is helpful to keep in mind the essential elements of a disparate impact case. "Disparate impact claims involve three stages of proof." *Robinson v. Metro–North Commuter R.R. Co.,* 267 F.3d 147, 160 (2d Cir.2001). First, a claimant must make a prima facie showing of disparate impact. *Id.* This requires a plaintiff to establish by a preponderance of the evidence that the employer "uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin." *Id.* (quoting 42 U.S.C. § 2000e–2(k)(1)(A)(i)). "To make this showing, a plaintiff must (1) identify a policy or practice, (2) demonstrate that a disparity exists, and (3) establish a causal relationship between the two." *Id.* (citation omitted). If the plaintiff makes a prima facie showing of disparate impact, the burden shifts to the employer "to demonstrate that the challenged practice or policy is 'job related for the position in question and consistent with business necessity.'" *Id.* at 161 (citation omitted). If the employer fails to demonstrate a business justification for the policy or practice, then the plaintiff prevails. However, if the employer succeeds in establishing a business justification, then the burden shifts back to the plaintiff "to establish the availability of an alternate policy or practice that would also satisfy the asserted business necessity, but would do so without producing the disparate effect." *Id.* (citations omitted). Also, because language-based discrimination is not *per se* unlawful, EEOC must prove that language is connected to national origin. *See* 29 C.F.R. § 1606.1 (2005) (defining national origin discrimination broadly as including cultural or linguistic characteristics of a national origin group). *See also* Mark Colon, *Line Drawing, Code Switching, and Spanish as Second–Hand Smoke: English–Only Workplace Rules and Bilingual Employees,* 20 Yale L. & Pol'y Rev. 227, 232 (2002) (finding that "lower courts have construed 'national origin' broadly, to include at least some underlying personal characteristics, such as accent and height, that are often highly correlated with national origin") (citing cases).

## DISCUSSION

### I. *Dr. Gonzalez's Testimony*

EEOC intends to offer Dr. Gonzalez to testify as an expert on four points that

relate to its disparate impact claim: (1) whether English language skills are used and required for carrying out warehouse job duties at BEI; (2) the phenomenon of code switching—the unconscious alternation of two languages in the same conversation; (3) whether or not the English-only rule achieves its purported goals; and, (4) the stigmatization caused by the rule. BEI objects to all but the code switching portion of Dr. Gonzalez's testimony. It argues that the remainder of her testimony is either unreliable or irrelevant, or both.

## A. *Whether English is Required in the Workplace*

It is Dr. Gonzalez's opinion that "[t]here is no linguistic evidence to support the implementation of an English-only policy . . . [because] the warehouse jobs [are] not language dependent and the English required for carrying them out [is] minimal." She also concludes that "BEI's warehouse job duties can be performed by workers with limited English-speaking, reading, and writing capabilities because they are routinized, manual labor jobs."

■ Although BEI does not contest that this portion of Dr. Gonzalez's opinion is reliable, it does object to this testimony on the ground that it is not relevant. Specifically, BEI contends that Dr. Gonzalez did not use any specialized linguistic knowledge to formulate her opinion. It claims that she did nothing more than observe and analyze the job tasks and that her testimony is merely a factual recounting of what goes on in the workplace. Thus, BEI asserts that her testimony is not relevant because it is duplicative of the facts presented by the testimony of the Charging Parties. The court does not agree.

Expert testimony is relevant if it is based on the expert's scientific, technical, or other specialized knowledge and will assist the trier of fact to understand the evidence or to determine a fact in issue. *See Mulder*, 273 F.3d at 101. However, testimony that is "directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help," is not relevant. *See id.* (internal citation omitted).

Contrary to BEI's assertion, Dr. Gonzalez employed specialized linguistic tools and knowledge to formulate her opinion that English is not necessary to perform the warehouse jobs at BEI. This conclusion is based on her observations of BEI employees performing their job functions on the work site, her interviews with the Charging Parties describing the manner in which they perform their jobs, and a language-use questionnaire that the Charging Parties completed. During her fact-finding investigation she observed that the Charging Parties routinely used numbers, not language, to locate products, check orders for accuracy, and to replace simple English phrases. For instance, when an ordered item was not in stock, the Charging Parties would use a "0" rather than words to indicate that fact. Based on the totality of the factual information that she gathered, Dr. Gonzalez was able to conclude that "[e]mployees rely on numbers, codes, colors, memorization, demonstration, and visual observation[,]" as opposed to verbal communication, to accomplish their tasks and that "[t]he BEI workplace is essentially a manual labor environment that is non-language dependent."

Dr. Gonzalez's testimony would be helpful to the trier of fact's understanding of the evidence. Merely because the factual foundation of her testimony might overlap with the testimony of the Charging Parties, with regard to the actual use of language on the job, does not mean it is cumulative or irrelevant. A district court is not compelled to exclude relevant expert testimony "that may in some way overlap

with matters within the jury's experience." *Hall,* 93 F.3d at 1344. Indeed, the factual portion of her testimony describing the actual use of language skills in the workplace is necessary to an understanding of her opinion that the job tasks at BEI are not language dependent. *See Joiner,* 522 U.S. at 146, 118 S.Ct. 512 (recognizing that "[t]rained experts commonly extrapolate from existing data") (citation omitted). Indeed, if her testimony lacked this type of factual basis, it would be inadmissible as lacking an adequate foundation. *See, e.g., Stecyk v. Bell Helicopter Textron, Inc.,* 295 F.3d 408, 420 (3d Cir.2002) ("district court abuses its discretion if it admits expert testimony that lacks an adequate factual basis"). Thus, Dr. Gonzalez's testimony on the issue of the need for language in the BEI workplace is not irrelevant or merely duplicative factual evidence. Its admission is proper under Rule 702 and it would not be overly prejudicial to BEI under Rule 403.

### B. *Effect of BEI's English-only Rule in the Workplace*

It is also Dr. Gonzalez's opinion that BEI's English-only rule does not achieve its purported goal of easing ethnic tension and promoting workplace safety because the rule (1) is arbitrary, unclear and subjectively enforced, (2) hampers the Charging Parties' ability to learn English, and (3) hinders workplace safety and efficiency. BEI claims that this portion of Dr. Gonzalez's testimony is unreliable and would not assist a trier of fact. The court disagrees.

There is no merit to BEI's objection that Dr. Gonzalez's testimony impermissibly relies on the deposition testimony of the Charging Parties. To be reliable, Rule 702 requires expert testimony to be grounded on sufficient facts. This objection goes to the weight of her opinion, not its admissibility. *See, e.g., Microfinancial, Inc. v. Premier Holidays Intern.,* 385 F.3d 72, 81 (1st Cir.2004) ("When the factual

underpinning of an expert's opinion is weak, it is a matter affecting the weight and credibility of the testimony—a question to be resolved by the jury.") (quoting *International Adhesive Coating Co. v. Bolton Emerson Int'l,* 851 F.2d 540, 545 (1st Cir.1988)).

■ There is also no merit to BEI's reliability-based objection to Dr. Gonzalez's opinion that the English-only rule impedes the Charging Parties' ability to learn English, which, in turn, perpetuates the potential for ethnic tension that can arise between workers who speak different languages. Her opinion is detailed, clear, straightforward, and based on her uncontested knowledge and experience in language policy and planning. Dr. Gonzalez relies on well-recognized and accepted principles of Second Language Acquisition Theory ("SLA Theory"), to conclude that restrictive language rules impede a person's ability to learn a second language. According to SLA Theory, "[s]econd language learners typically can acquire vocabulary in the second language more rapidly if they understand the meaning or 'deep structure' of the word or concept first." Based on this recognized SLA Theory, Dr. Gonzalez concludes that native Spanish speakers at BEI would improve their English proficiency if they were allowed to first learn their jobs in their native language because repeated exposure to the English word and its Spanish equivalent would enable them to eventually comprehend the English word or concept without reference to the Spanish word. This testimony would assist a trier of fact to understand Dr. Gonzalez's opinion that restrictive language policies do not promote second language acquisition, but rather prolong dependence on a foreign language. *See Hall,* 93 F.3d at 1345 (reasoning that social science expert

opinion is relevant where it shows that a commonly held belief might be incorrect). Her opinion will also assist the jury in determining whether or not the rule actually contributes to ethnic tension by perpetuating the conflict that can exist between workers who speak different languages. BEI's objections to this testimony, which are based on the truth or falsity of Dr. Gonzalez's conclusions, also fail because such objections go to the weight of her testimony, not to its admissibility. *See, e.g., American & Foreign Ins. Co. v. General Elec. Co.,* 45 F.3d 135, 138 (6th Cir.1995) (noting that under *Daubert* the court is not to concern itself with the truth or falsity of an expert's conclusions). Thus, because the court finds that Dr. Gonzalez's opinion is relevant, this portion of her opinion is admissible.

■ Further, her opinion that BEI's English-only rule does not promote workplace safety or productivity, is also relevant. Dr. Gonzalez states that prohibiting employees from speaking in their native language slows communication and is marked by excessive hedging, repeated information, false starts, and requests for confirmation by the speaker. In her view, if the Charging Parties were permitted to speak Spanish to one another, they would be able to communicate ideas more rapidly and with more assurance and that the rule actually impedes an employee's reaction time during, for example, an emergency. This testimony would also help a jury to understand how the rule might affect the efficiency and productivity of the Charging Parties. BEI's objections that this portion of Dr. Gonzalez's opinion should not be admitted because she is neither a safety expert nor a productivity expert and that it contradicts the other part of her opinion—that BEI is not a language-dependent workplace—goes to the weight of Dr. Gonzalez's testimony and not to its admissibility.

### C. Correlation Between Language and National Origin and the English–Only Rule's Effect on Individuals

■ Finally, Dr. Gonzalez's testimony is offered to show the correlation between language and national origin and the stigmatization and other harmful effects of the English-only rule. It is Dr. Gonzalez's opinion that (1) there is an "inextricable link between language use and ethnic identity"; (2) that from a socio-linguistic perspective "language is the most vital characteristic of ethnic/national origin identity"; and (3) that BEI's English-only rule stigmatizes linguistic minorities and has harmful effects on the Charging Parties and others similarly situated. BEI objects to this portion of her testimony and argues that it is unreliable and irrelevant. In particular, BEI contends that Dr. Gonzalez's opinion is unreliable because she is not a psychologist and her conclusions are based solely on the Charging Parties' subjective feelings. BEI also submits that Dr. Gonzalez's opinion is duplicative and unnecessary because the jury will hear the Charging Parties' direct testimony regarding their feelings of stigmatization. The court finds no merit to these objections.

Dr. Gonzalez's opinion regarding the correlation between language and national origin is admissible because it is both reliable and relevant. Her opinion, while not based on a formal scientific method, is properly grounded, well-reasoned, and not speculative. Dr. Gonzalez relies on scholarly publications in the fields of sociolinguistics, ethnolinguistics, and linguistic anthropology which indicate that "a person's language is inextricably linked with his or her national origins, and self-identity" and that this is particularly true with respect to Spanish-speaking Hispanics. This correlation is fundamental to EEOC's claim of national origin discrimination.

Dr. Gonzalez's testimony as to stigmatization is also relevant to EEOC's claim of disparate impact because it will help the jury understand how the Charging Parties' employment was disproportionately affected by the English-only rule and that the Charging Parties' feelings of stigmatization are not unique. *See, e.g., Garcia v. Spun Steak Co.*, 998 F.2d 1480, 1485–86 (9th Cir.1993) (finding "that a disparate impact case may be based upon a challenge to a practice or policy that has a significant adverse impact on the 'terms, conditions, or privileges' of the employment of a protected group under [Title VII]"). Contrary to BEI's objection, Dr. Gonzalez does not merely rely on the Charging Parties' subjective feelings to reach her conclusions. Rather, she uses the Charging Parties' subjective feelings only to show that their feelings are the same as those reported by other sociolinguists and linguists about similar restrictive language situations. Because her testimony would assist a trier of fact, this portion of Dr. Gonzalez's testimony is relevant, and therefore, also admissible.

## II. *Mr. Harper's Testimony*

■ EEOC intends to offer Mr. Harper to testify as a safety expert on three points: (1) whether BEI's English-only rule is necessary to promote safety in the workplace; (2) to provide a general description and evaluation of BEI's safety program; (3) to identify alternative safety strategies that would be less onerous than the English-only rule. It is Mr. Harper's opinion that there is "no safety, health or operational (i.e. equipment safety) reason for ... [BEI] to implement an English-only Policy or rule." He also opines that BEI does not have "an effective safety program," and that BEI can implement alternate safety strategies that are less onerous than the rule. BEI submits that Mr. Harper's opinions are not admissible, in part, because they are unreliable. Spe-

cifically, it contends that the methodology Mr. Harper used to formulate his conclusions is impermissibly based on his experience alone. BEI argues that Mr. Harper's experience-based methodology lacks the *Daubert* reliability factors, such as testability, peer review, publication, rate of error, and degree of acceptance. *See Daubert*, 509 U.S. at 589–95, 113 S.Ct. 2786. The court disagrees.

Nothing under the Federal Rules of Evidence or *Daubert* suggests that experience alone cannot provide a sufficient foundation for expert testimony. *See* Fed. R.Evid. 702, Advisory Committee Notes, 2000 Amendments. "To the contrary ... in certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." *Id.* (citation omitted). *See also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150, 119 S.Ct. 1167, 143 L.Ed.2d 238 (recognizing "there are many different kinds of experts, and many different kinds of expertise) (citation omitted). Because experience may give an expert 'specialized' knowledge ... based on sufficient practical or work experience [possessed] in the field about which the [expert] is testifying ... [such testimony] need not be based on testing or experiments ..." *Lauria v. National R.R. Passenger Corp.*, 145 F.3d 593, 599 (3d Cir. 1998). Thus, "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire*, 526 U.S. at 150, 119 S.Ct. 1167 (citation and quotes omitted).

Here, BEI mistakenly asserts that Mr. Harper's opinion is not reliable because his methodology is just his experience as a safety engineer. As *Kumho Tire* instructs, even though the reliability of his testimony cannot be assessed under the specific factors set out in *Daubert*, his

testimony is nevertheless reliable in light of his extensive, specialized experience in the field of workplace safety. Mr. Harper currently holds the position of Site Safety and Forensics Engineer at Hewlett Packard ("HP"), where he has been employed for 37 years. During his employment at HP, he also held a number of other safety-related positions. Additionally, Mr. Harper is a Certified Safety Professional and Board Certified Forensics Examiner. He has more than 30 years of experience in industrial safety, accident reconstruction, human factors (the study of people in their work environment, performing a task), loss prevention, code compliance and design safety in machinery, processes, products and buildings. As a result of this experience, Mr. Harper is familiar with applicable federal and state safety codes and regulations, including Uniform and International Fire and Building Codes, National Electrical Code, and OSHA.

In this case, Mr. Harper used his specialized experience in safety to assess BEI's safety program, which he accomplished by conducting a thorough, on-site investigation of BEI's Hartford warehouse, and reviewing interrogatories, depositions, OSHA logs, job descriptions, photos, and the BEI employee policy manual. Based on the totality of the information he obtained, Mr. Harper concluded that the English-only rule was not necessary for workplace safety. Contrary to BEI's argument, simply because Mr. Harper's conclusion is not amenable to analysis under the *Daubert* factors, that does not make his opinion unreliable. As noted in *Kumho Tire,* the *Daubert* inquiry for reliability is a "flexible one" and does not "constitute a definitive checklist or test." *See Kumho,* 526 U.S. at 150, 119 S.Ct. 1167 (citation omitted). In fact, the "[Daubert] factors do not all necessarily apply even in every instance in which the reliability of scientific testimony is challenged."

*Id.* at 151, 119 S.Ct. 1167. Because the liberal thrust of Rule 702 encourages admission of expert testimony, *see Daubert,* 509 U.S. at 588, 113 S.Ct. 2786 (quoting *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 169, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988)), BEI's objections as to the admissibility of his testimony are challenges that more appropriately go to the weight of Mr. Harper's testimony and can be explored on cross-examination at trial.

■ Mr. Harper's opinion is also relevant. Merely because he bases his opinion, in part, on facts to which the Charging Parties will testify does not mean that it will not assist the trier of fact. *See United States v. Brawner,* 173 F.3d 966, 969 (6th Cir.1999) (reasoning that the test for admissibility is not necessity but whether the opinion will assist the trier of fact) (citing Fed.R.Evid. 702). *See also Canino v. HRP, Inc.,* 105 F.Supp.2d 21, 28 (S.D.N.Y. 2000) (reasoning that doubts about the usefulness of an expert's testimony should be resolved in favor of admissibility) (citing *McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1043–44 (2d Cir.1995)). His testimony will help the jury understand, from a safety perspective, the significance or lack of significance of certain features of the BEI workplace. Moreover, for the jury to fully understand his conclusion that the English-only rule is not necessary for workplace safety, Mr. Harper will need to explain the facts on which that opinion rests. He must explain to the jury that the reason he believes the English-only rule is unnecessary for workplace safety is because there are bilingual managers at BEI and the safety hazards there are related to material mishandling, not communication failures. Moreover, Mr. Harper's testimony would assist a trier of fact because it bridges the analytical gap between the average juror's common knowledge of workplace safety, e.g., that fire hazards in

the BEI warehouse are unsafe, with the specialized knowledge of a safety expert who can identify other hidden dangers, such as uneven walls and exit routes, hidden exit signs, and high storage racks, and explain how these hazards are best addressed by measures other than the English-only rule. Accordingly, because the court finds that Mr. Harper's testimony is also relevant, it is admissible.

### CONCLUSION

For the reasons given above, BEI's motions to preclude the testimonies of Dr. Roseann Dueñas Gonzalez [dkt. # 69] and Earnest F. Harper [dkt. # 67] are both DENIED.