CMI–TRADING, INC., Plaintiff–Appellee,

v.

QUANTUM AIR, INC., and Salvador Esquino, Defendants–Appellants.

No. 95–1427.

United States Court of Appeals, Sixth Circuit.

Argued May 23, 1996.

Decided Oct. 18, 1996.

---

George W. Burnard (argued and briefed), Dean & Fulkerson, Troy, MI, for Plaintiff–Appellee.

Stanley M. Weingarden (argued and briefed), Partovich & Weingarden, Farmington Hills, MI, for Defendants–Appellants.

Before: RYAN and NORRIS, Circuit Judges; DOWD, District Judge.*

RYAN, Circuit Judge.

Plaintiff CMI–Trading, Inc., brought an action for judgment on a promissory note (Count I) and for judgment for breach of a contemporaneous agreement (Count II) in the district court. The district court, exercising its diversity jurisdiction, granted plaintiff's motion for a directed verdict on Count I and submitted Count II to the jury, which found that the plaintiff had fulfilled its obligations and earned a commitment fee, but not a success fee. Defendants appealed and we now affirm the judgment of the district court.

## I.

In December 1991, plaintiff loaned $395,-000 to defendants so that defendants could purchase a certain Lear jet, fix it up, and sell it. The promissory note stated that the loan was to bear interest of 12% up until demand for payment was made, and thereafter was to bear interest of 18%. The parties contemporaneously signed a letter agreement which provided that defendants would pay plaintiff a 1% commitment fee for making the loan and a "success fee" of at least $20,000 (and 50% of the net profits of the sale if such profit was made) when the underlying security, a Lear jet, was sold. The letter agreement stated that "[t]his agreement and the Security Agreement and Promissory Note set forth the entire understanding of each of us and supersedes and [sic] prior written or oral understandings with respect hereto."

The parties agree that the defendants received the $395,000, used the money to purchase and refurbish the jet, received a demand for repayment, and paid nothing on the

---

* The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

promissory note debt or on the commitment fee and success fee provided for in the letter agreement. Thus, defendants have admitted most of the elements of the plaintiff's case. Title to the jet was taken in the name of Quantum Air, Inc. with a security interest given by Quantum to CMI–Trading to secure payment of the promissory note.

Defendants allege in their counter-complaint that the signed contracts were not the actual deal between the parties, that the arrangement was in reality a joint venture agreement such that the "loan" was really an investment that would entitle the "lender" to repayment only if the venture was successful. Defendants further claim that the plaintiff breached the joint venture agreement by failing to provide financing to a prospective purchaser of the jet and by failing to make sufficient attempts to help sell the jet.

In May 1992, Quantum asked CMI–Trading to consider making a loan to a potential buyer to enable the buyer to purchase the jet from Quantum, but CMI–Trading declined to make the loan. The Lear jet was not sold before the date of trial.

Prior to trial, plaintiff moved for summary judgment. The district court denied the motion and issued an opinion finding:

> On the basis of the affidavits [which were submitted by John S. Hodge, who signed the Agreement for CMI–Trading, and Salvador Esquino, who signed the Agreement for Quantum, and in which the affiants stated that the Agreement did not constitute the final and complete understanding of the parties and that each affiant understood that CMI–Trading would be a partner in marketing the plane and would finance or lease the jet to a qualified third party purchaser] and the Agreement itself, ... the Court cannot agree that no genuine issue of material fact existed as to whether the Agreement was integrated [and unambiguous].
>
> ....
>
> The Agreement itself is ambiguous as to which party was to take title to the jet. One paragraph of the Agreement states that CMI is to get a first lien and security agreement on the jet, the next paragraph says that the title will remain in the name

of CMI, and ensuing paragraphs require Quantum Air, Inc. to obtain and pay for insurance on the lear jet. . . .

> The language of the Agreement is similarly ambiguous with respect to whether the transaction is a loan, as CMI claims, or a joint venture, as Quantum claims. Although the Agreement states that it is a loan, the language within suggests an alternate arrangement. The title to the jet was to be in CMI's name, CMI was to share in the profits, Quantum Air, Inc. was to obtain and pay for insurance, and CMI could void any *cash* sale. The combination of these factors demonstrate that CMI had significant control over the purchase and resale of the jet, not just its "loan" to Quantum.
>
> For the above reasons, the Court finds that the Agreement was ambiguous. For the same reasons, the Court finds that Quantum's claims of joint venture and breach of contract are not inconsistent with the Agreement. Therefore, the parol[ ] evidence rule does not operate to preclude Quantum's joint venture and breach of contract claims. As genuine issues of material fact remain on Quantum's joint venture and breach of contract claims, summary judgment of these claims is inappropriate.

Later, however, the district court granted plaintiff's motion for a directed verdict on the promissory note, Count I. The district court found that the loan had been made, the demand for repayment had been made, but no payments had been made. The court determined that there was ambiguity *as to other matters*, but no ambiguity having anything to do with the validity and enforceability of the note:

> You have a promissory note, and you have references to the note in [the letter agreement]. Paragraph number one [of the letter agreement], for instance, talks about the loan, and calls it a "loan" and it says no matter what happens, it does not limit the demand nature of the note.

Count II, based on the letter agreement, was submitted to the jury. The jury completed a special verdict form and found that:

(1) CMI–Trading earned a commitment fee as specified in the written agreement of December 17, 1991; (2) no success fee was due to CMI–Trading under the terms of the written agreement of December 17, 1991; (3) the parties did agree that CMI–Trading would assist in marketing the Lear jet, but that CMI–Trading did not breach that agreement; and (4) the parties did not agree that CMI–Trading would finance the purchase of the Lear jet by any third-party purchaser.

## II.

The defendants appeal on two grounds: that the district court 1) improperly excluded expert opinion testimony and 2) improperly granted plaintiff's directed verdict motion on Count I.

### A.

■ Defendants sought to introduce the opinion testimony of proposed expert witness William Bigelow, who is a financial consultant of corporations, and who specializes in private equity transactions. Defendants asked Bigelow to review the promissory note, the letter agreement, and other documents, and to express an opinion whether CMI–Trading "was an arm's length lender as CMIT contends in this lawsuit, or [merely] an investor in a business transaction as contended by the defendant." The court sustained an objection to Bigelow's testimony and did not permit the jury to hear it.

Defendants then recalled defense witness John S. Hodge, who had signed the agreement for plaintiff CMI–Trading and who had expertise as an international trading expert. Defendants sought Hodge's expert opinion on "whether or not the transaction involved in this case ... was a loan or a joint venture." The court permitted Hodge to render an opinion, and Hodge stated that it was his opinion that the transaction "would be best characterized as a joint venture."

"Appellate review of trial court rulings on the admissibility of expert opinion testimony under Fed.R.Evid. 702, depending upon the assignment of error, may involve as many as three separate standards of review." *Cook v. American Steamship Co.*, 53 F.3d 733, 738

(6th Cir.1995). We first review the trial court's preliminary factfinding under Fed. R.Evid. 104(a)—that is, its determination concerning the qualifications of the witness— for clear error. *Id.* Second, whether the opinion that the expert will offer is properly the subject of " 'scientific, technical, or other specialized knowledge' " is a question of law for *de novo* review. *Id.* (citation omitted). Third, "whether the proffered expert opinion 'will assist the trier of fact to understand the evidence or to determine a fact in issue' " is a determination of relevance, which this court reviews for abuse of discretion. *Id.* (citation omitted). Thus, the district court "is accorded wide discretion in determining the admissibility of evidence challenged as irrelevant." *McGowan v. Cooper Indus., Inc.*, 863 F.2d 1266, 1271 (6th Cir.1988).

We conclude that the opinion that Bigelow would have offered was not properly the subject of "scientific, technical, or other specialized knowledge." Fed.R.Evid. 702. Bigelow's opinion regarding whether the parties *intended* to enter a lending relationship or a joint venture relationship was not admissible. The intent of the parties is an issue within the competence of the jury and expert opinion testimony will not assist the jury, within the meaning of Federal Rule of Evidence 702, in determining the factual issue of intent. Bigelow's opinion concerning whether the parties created a loan relationship rather than a "joint venture" was likewise inadmissible. The legal concepts of "loan" and "joint venture" are issues of law and are within the *sole* competence of the court; "experts" may not testify as to the legal effect of a contract. Thus, Bigelow's proposed expert testimony was properly excluded. *See, e.g., Innes v. Howell Corp.*, 76 F.3d 702, 711 (6th Cir.1996).

### B.

■ The defendants also appeal the district court's decision to grant plaintiff's motion for a directed verdict on Count I. At the close of the evidence, defendants continued to argue to the court that the agreement was not a loan but a joint business endeavor. Defendants argued that, because the agreement was internally inconsistent and ambigu-

ous, the written terms of the agreement could be supplemented by parol evidence. Consequently, they argue, the jury should have been permitted to determine whether the transaction was a loan that had to be repaid upon demand or an investment under which the defendants had to repay the sums advanced only if or when they succeeded in selling the jet.

The promissory note provides that the defendants will repay upon demand the principal sum of $395,000, plus interest, or such lesser sum still unpaid on the amount advanced to the borrower by CMI–Trading, plus interest. The transaction is consistently referred to as a loan, and liability of the borrower to CMI–Trading is said to be "absolute and unconditional." The letter agreement provides that the loan is intended to cover the purchase and overhaul of a jet but that this intent "does not limit the demand nature of the Demand Note." Further, the letter agreement provides that the defendants were to sell the jet within 120 days after defendants' acceptance of the loan agreement and that their failure to do so would cause CMI–Trading to make its demand for repayment immediately.

Defendants rely on the fact that both signatories, Hodge and Esquino, testified that the deal was a joint venture, not a straight loan, and that the letter agreement was ambiguous in that it called for a splitting of profits, which was established to be unusual in traditional loans. The plaintiff counters that defendants signed a demand note and a letter agreement providing that the intent of the loan was to enable defendants to purchase and repair a jet for resale but that such intent "does not limit the demand nature of the Demand Note." There is no question that demand was made and that payment was not made. Although defendants argued that the agreement was not for a simple loan but for a "joint venture," the choice of nomenclature has no significance independent of the question of whether there were additional provisions and conditions to the agreement that the plaintiff breached—a question that *was* submitted to the jury. In diversity cases, this court "applies the standard for a directed verdict used by the courts of the state whose substantive law governs the action." *Potti v. Duramed Pharmaceuticals, Inc.,* 938 F.2d 641, 645 (6th Cir.1991), *quoted in American & Foreign Ins. Co. v. General Elec. Co.,* 45 F.3d 135, 139 (6th Cir.1995). The contract in this case provides that Michigan law applies. Michigan law, in turn, provides that "'[a] trial court may direct a verdict on an issue if the evidence, viewed in a light most favorable to the nonmoving party, fails to give rise to a material issue of fact upon which reasonable minds could differ.'" *American & Foreign Ins. Co.,* 45 F.3d at 139 (citation omitted). "If reasonable jurors could disagree, neither the trial court nor this Court has the authority to substitute its judgment for that of the jury." *Matras v. Amoco Oil Co.,* 385 N.W.2d 586, 588 (Mich.1986), *cited in Kingsley Assocs., Inc. v. Del–Met, Inc.,* 918 F.2d 1277, 1280 (6th Cir.1990).

■ Although "the parol evidence rule relates to trial procedure, it is substantive in nature." *American Anodco, Inc. v. Reynolds Metals Co.,* 743 F.2d 417, 422 (6th Cir. 1984). Michigan follows the general rule that does not permit extrinsic evidence to contradict the terms of a written contract that was intended by the parties to be a complete expression of their agreement. *Id.; Central Transp., Inc. v. Fruehauf Corp.,* 139 Mich.App. 536, 362 N.W.2d 823, 827 (1984). However, "[e]xtrinsic evidence of prior or contemporaneous agreements ... is admissible as it bears on this threshold question of whether the written instrument is such an 'integrated' agreement." *American Anodco,* 743 F.2d at 422 (internal quotation marks and citation omitted). Additionally, extrinsic evidence may be admitted to demonstrate that a contract is ambiguous and to resolve any ambiguity that is demonstrated. *Id.* Extrinsic evidence offered to show that a contract was not intended to be a complete expression of an agreement on the matters covered must be presented to the jury so that the jury may determine whether the contract was, in fact, intended to be a complete integration of the agreement. *Omega Constr. Co. v. Murray,* 129 Mich.App. 509, 341 N.W.2d 535, 538 (1983).

We conclude that the district court correctly directed a verdict for the plaintiff on Count I because the $395,000 was owed by the express terms of the contract and it was not paid. The defendants claim that the $395,000 loan was not due because the written contract was ambiguous and the true agreement of the parties was that the $395,000 was not a loan payable on demand but an investment payable only if the defendants' venture was successful. However, at best, the contract is ambiguous only if the language in the note and agreement is given an "'unnatural and contrived construction.'" *General Aviation, Inc. v. Cessna Aircraft Co.*, 915 F.2d 1038, 1041 (6th Cir.1990) (citation omitted). The defendants do not identify express language that is ambiguous, offer extrinsic evidence that reveals a latent ambiguity in the contract, or offer extrinsic evidence that suggests that the contract was only partially integrated. Rather, they assert, without evidence, that the contract does not mean what it says: that the transaction was a loan due upon demand. They argue that the language means quite the opposite: that the transaction was not a loan but an investment, repayment of which was due only upon the success of the endeavor. Affidavits submitted by the defendants containing bald assertions of the parties' true intent constitute the only "evidence." Thus, the defendants make what "amounts to an assertion rather than an argument." *Whitaker–Merrell Co. v. Profit Counselors, Inc.*, 748 F.2d 354, 357 (6th Cir.1984). There is no genuine issue of material fact.

> To hold otherwise would mean that no matter how well-crafted and completely integrated a contract may be, if a party submits an affidavit that asserts a different oral agreement exists ..., parol evidence would always be admissible and a trial would always be necessary. Such a result would turn the law of contracts on its head.

*Boulevard Bank Nat'l Ass'n v. Adams Newspapers, Inc.*, 787 F.Supp. 122, 125 (E.D.Mich. 1992). As in *General Aviation*, there is no real factual dispute here about the terms of the contract. 915 F.2d 1038. The district court properly directed a verdict for the plaintiff on Count I.

## III.

The judgment of the district court is **AFFIRMED**.