*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0303p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JOHNSON CONTROLS, INC.,

　　　　　　　　　*Plaintiff-Appellee/*
　　　　　　　　　*Cross-Appellant,*

　　*v.*

JAY INDUSTRIES, INC.,

　　　　　　　　　*Defendant-Appellant/*
　　　　　　　　　*Cross-Appellee.*

Nos. 05-1826/1879

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-70433—Avern Cohn, District Judge.

Argued: June 7, 2006

Decided and Filed: August 18, 2006

Before: MARTIN, MOORE, and ROGERS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** E. Edward Hood, DYKEMA GOSSETT, Ann Arbor, Michigan, for Appellant. Sheldon H. Klein, BUTZEL LONG, Detroit, Michigan, for Appellee. **ON BRIEF:** E. Edward Hood, Bradley L. Smith, DYKEMA GOSSETT, Ann Arbor, Michigan, for Appellant. Sheldon H. Klein, Philip J. Kessler, Robin K. Luce, BUTZEL LONG, Detroit, Michigan, for Appellee.

_____

## OPINION

_____

　　KAREN NELSON MOORE, Circuit Judge. Defendant-Appellant Jay Industries, Inc. ("Jay") appeals from the district court's judgment against it following a jury trial and the district court's denial of its post-trial motions. Plaintiff-Appellee Johnson Controls, Inc. ("JCI") cross-appeals from the district court's denial of its post-trial motions. The dispute in this case arose over the price of packaging for parts that Jay supplied to JCI for use in constructing automobile seats; JCI claims that the parties had an agreement according to which Jay would purchase returnable packaging and then amortize the cost of the packaging over the course of several months. Jay never stopped charging JCI for the packaging, even after the packaging costs should have been paid in full. When JCI discovered the overcharges several years later, it brought this suit against Jay. The district court awarded damages to JCI for the overcharges accruing after the point at which it notified Jay of the

1

problem.  In its appeal, Jay argues that the district court should have granted its motion for judgment as a matter of law because of the untimely nature of JCI's claims and because of the lack of evidence of an amortization agreement, that the district court erred in instructing the jury and in presenting the verdict form, and that the district court improperly admitted parol evidence of the amortization agreement.  In its cross-appeal, JCI contends that it was entitled to damages prior to the time that it notified Jay of the overcharges and that the district court erred in allowing the jury to determine that Jay was entitled to an ongoing "packaging charge."  For the reasons discussed below, we **AFFIRM** the judgment of the district court on each of the claims presented on appeal.

## I.  BACKGROUND

Jay is a tier-two automotive supplier that manufactures components of automobile parts.  JCI — a tier-one supplier — purchases components from Jay, incorporates them into automotive systems, and then sells the systems to automobile manufacturers.  In June 1993, Jay and JCI entered into a long-term agreement regarding the Ford Villager/Nissan Quest and the Ford Econoline; JCI agreed to purchase parts from Jay "for the life of the program" at a reduced price.  3 J.A. at 867 (JCI-ASG Long-Term Agreement).

On December 6, 1994, Jay provided JCI with an estimate for the cost of three new front-seat manual pedestals for the Econoline Van program ("VN127 program").  The letter setting forth the estimate explained that packaging was not included but that Jay "will . . . amortize returnable racks — investment and amortization content to be determined."  3 J.A. at 870 (Letter from Todd M. Gensheimer to Vic Bohacheff).  JCI agreed to purchase the pedestals from Jay, stating that the cost of packaging would be determined at a later time.  The parties began the process of designing the pedestals, without ever finalizing the packaging issue.  In March 1996, the parties agreed temporarily to use expendable packaging (cardboard) and to add $1.62 per assembly to cover the cost of the cardboard packaging.  On June 3, 1996, JCI issued its first permanent production order for the pedestals.  Jay began shipping the pedestals pursuant to this order.

After the parties agreed temporarily to use expendable packaging, Jay submitted several letters to JCI proposing amortization terms for returnable containers.  The final letter on this topic, dated June 4, 1996, proposed that Jay would purchase 390 containers ($249,795) and that JCI would reimburse Jay for the containers at a cost of $1.26 per part to be paid over the course of eight or nine months.  Darren Robinson from JCI signed and returned the letter to Jay the next day; however, Robinson deleted one section and added an amendment.[1]  Todd Gensheimer from Jay testified that he called Robinson upon receipt of the amended letter to inform him that Jay would not sign the agreement with the proposed changes.  Robinson testified that he did not recall being contacted by anyone from Jay regarding the changes.  After this exchange, the parties continued to work on the returnable packaging issue.  On November 21, 1996, JCI sent a letter "authoriz[ing] [Jay] to release the order for returnable containers for the following part numbers . . ."  3 J.A. at 887 (Letter from Jim Veil to Dick Young).  The letter concluded that "[p]ayment terms and conditions will be handled at a later date with JCI-Plymouth and Todd Gensheimer."  3 J.A. at 887.  Jay purchased the returnable containers.

Jay asserts that at this time, "JCI personnel were actively reviewing whether JCI should abandon the idea of an amortization agreement and instead purchase the returnable containers itself outright."  Appellant Br. at 12; *see also* 3 J.A. at 1019-20 (Broshco Returnable Summary) (comparing the costs of purchasing versus amortizing the containers); 3 J.A. at 1021 (Mem. from Don Mills to Mike Warner) (stating that "[w]e would perfer [sic] to buy the containers out-right to

---

[1]Robinson deleted the section providing that "JCI will retain responsibility for replacement cost in the event of lost or damaged containers."  3 J.A. at 884 (Amended Letter from Jay to Darren Robinson).  The amendment stated that "[e]ach supplier is responsible for the cleanliness and appearance of all returnable containers."  3 J.A. at 885.

save money"). JCI responds by explaining that Veil and Mills did look into the prospect of purchasing the containers; however, they stopped investigating this option when Mills was informed that the parties had a "binding contract and that it was closed and nonnegotiable." 3 J.A. at 755-56 (Trial Tr. at 33-34) (Mills Test.).

In February 1997, Jay began using the returnable containers in its shipments. The parties amended the prices of the pedestals several times over the next few years, yet the $1.62 that had been included for the cost of the cardboard packaging never was eliminated. Not only was the $1.62 never eliminated, but Jay also never reduced the price of the pedestals by $1.26 once Jay recovered the price of the returnable packaging as per the proposed amortization agreement. In 2001, a JCI employee analyzed the VN127 pedestal data while researching another project and discovered that the $1.26 was never eliminated from the purchase orders.

On February 4, 2002, JCI filed a complaint against Jay in federal district court. JCI's final amended complaint included the following claims related to the packaging dispute: breach of contract, unjust enrichment, promissory estoppel, and a request for declaratory judgment. The complaint also included various claims regarding a price increase imposed by Jay and JCI's right to submit the VN127 program for competitive bidding.[2] Jay filed both a motion to dismiss and a motion for summary judgment on the returnable-container claims, and JCI filed a motion for summary judgment. In June 2003, the district court denied Jay's motion to dismiss, and it denied both parties' motions for summary judgment. The district court also concluded that "JCI is time barred from making any claim based on overcharges which occurred more than 4 years prior to filing suit, or prior to February 1998." 2 J.A. at 524 (Dist. Ct. Mem. & Order Granting in Part and Denying in Part Def.'s Mot. to Dismiss at 13 ("Dist. Ct. Mot. to Dismiss Order")).

In August 2004, the district court ordered that the issues of liability and damages be tried separately. The jury trial began on October 19, 2004. On November 8, 2004, Jay filed a motion for judgment as a matter of law "on JCI's packaging claims," 2 J.A. at 612; subsequently, JCI filed a motion for judgment as a matter of law on these claims, and Jay filed a second motion for judgment as a matter of law. The district court did not rule on these motions before the case was submitted to the jury. The jury came to the following conclusions with regard to the packaging claims: Jay breached the parties' agreement as to the VN127 pedestals; the agreement required that Jay reduce its price by $1.26 after JCI had fully paid for the returnable packaging; and JCI did not notify Jay of the overcharge "within a reasonable time after it discovered or should have discovered this charge." 2 J.A. at 646 (Verdict). The district court entered judgment in favor of JCI on the packaging claims "in the amount of $1,810,336 for the period February 5, 1998 through July 7, 2001 and $1,402,366 for the period July 8, 2001 (the date on which JCI notified Jay of the packaging overcharge dispute) through September 14, 2004." 2 J.A. at 660 (J.).

On May 16, 2005, the district court entered an order addressing the various post-trial motions that were submitted by Jay and JCI. The district court amended the judgment so that JCI would no longer receive the $1,810,336 for the period prior to July 8, 2001. Jay timely appealed the district court's December 3, 2004 and May 16, 2005 judgments (Case No. 05-1826), and JCI filed a cross-appeal (Case No. 05-1879).

The district court had diversity jurisdiction pursuant to 28 U.S.C. § 1332 because JCI is incorporated in Wisconsin with its principal place of business in Wisconsin, and Jay is incorporated in Ohio with its principal place of business in Ohio; the amount in dispute in this case clearly exceeds the amount-in-controversy jurisdictional requirement. This court has jurisdiction pursuant to 28 U.S.C. § 1291 because the parties filed timely notices of appeal.

---

[2]This appeal is limited to the claims regarding the returnable containers.

## II.  ANALYSIS

### A.  Standard of Review

We review de novo a district court's denial of a motion for judgment as a matter of law. *Keeton v. Flying J., Inc.*, 429 F.3d 259, 262 (6th Cir. 2005).  "Judgment as a matter of law is appropriate when 'viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party.'" *Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 527 (6th Cir. 2005) (internal quotation marks omitted).

### B.  Dismissal of JCI's Claims on the Basis of Untimeliness

#### 1.  Statute of limitations

The district court concluded that JCI's claims for overpayments arising over four years prior to the filing of the suit were untimely; JCI did not appeal this conclusion.  Jay asserts that JCI's claims after February 1998 are also barred by the four-year statute of limitations for breach-of-contract claims.  *See* MICH. COMP. LAWS § 440.2725(1) (U.C.C. § 2-725).[3]  Jay claims that the district court improperly applied the "continuing violations" or "continuing breach" doctrine in allowing JCI's claims to go forward, Appellant Br. at 19;[4] the "continuing wrong" doctrine "recognizes that '[w]here a defendant's wrongful acts are of a continuing nature, the period of limitation will not run until the wrong is abated.'" *Blazer Foods, Inc. v. Rest. Props., Inc.*, 673 N.W.2d 805, 809 (Mich. Ct. App. 2003) (alteration in original) (internal quotation marks omitted).

However, the "continuing breach" theory is not relevant to the case[5] because the VN127 agreement is an installment contract.[6]  Michigan Compiled Laws § 600.5836 states that "claims on an installment contract accrue as each installment falls due."  Thus, "each overcharge was a distinct breach" that fell within the four-year statute of limitations.  1 J.A. at 362 (Dist. Ct. Mem. & Order Re: Post Trial Mots. ("Dist. Ct. Mem. & Order") at 10).  Jay offers several arguments regarding the applicability or effect of § 600.5836.  First, Jay asserts that the amortization contract was distinct from the VN127 pedestal contract and thus only lasted approximately seven months.  JCI's fourth amended complaint clearly asserts that the packaging agreement was a part of the VN127 contract. *See* 1 J.A. at 129 (Verified Fourth Amended Compl. ¶ 8) ("The Returnable Container Program that is a subject of this Complaint is part of the 1994 Agreement . . .").  In addition, there is evidence in the record to support the conclusion that the packaging agreement was negotiated in the context of the overall agreement for the sale of pedestals.  *See, e.g.*, 3 J.A. at 941 (Letter from Todd Gensheimer to Vic Bohacheff dated Dec. 6, 1994) (discussing amortization in the context of the pedestal agreement as a whole).  As we are required to view the facts in the light most favorable to

---

[3]In this opinion, we include the corresponding U.C.C. section (if applicable) along with the Michigan statute.

[4]We refer to Jay as the appellant throughout this opinion, although it is both the appellant and the cross-appellee.

[5]JCI also points out that it "never asserted a 'continuing breach' theory, nor did the trial court rule on this basis."  Appellee Br. at 29.

[6]The parties do not dispute that the VN127 agreement is an installment contract.

JCI, we conclude that the packaging agreement was not a distinct agreement from the VN127 installment contract.[7]

Finally, Jay claims that § 600.5836 is inapplicable because it is relevant only for the payment of money, rather than the delivery of goods. Instead, Jay asserts that the relevant rule is U.C.C. § 2-612,[8] which states that "[a]n 'installment contract' is one which requires or authorizes the delivery of goods in separate lots to be separately accepted." According to § 2-612(3), a breach of the whole contract occurs at the time that the contract is substantially impaired; Jay claims that the contract was substantially impaired prior to February 1998. However, we see no reason that the general contract principle set forth in § 600.5836 should not apply in this case. *See Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 195 (1997) ("Consistent with general principles governing installment obligations, each missed payment creates a separate cause of action with its own six-year limitations period."). Because the agreement was an installment contract for the delivery of goods, each installment after February 1998 was substantially impaired. *See* 2 J.A. at 523 (Dist. Ct. Mot. to Dismiss Order at 12) ("[T]he thousand of dollars in overcharges per order serves as a substantial impairment."). JCI's claims arising after February 1998 are not barred by the statute of limitations.

### 2. Failure to provide reasonable notice

The district court concluded that U.C.C. § 2-607 applies in this case.[9] The parallel Michigan statutory provision provides:

> (3) Where a tender has been accepted
>     (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy . . . .

MICH. COMP. LAWS § 440.2607(3). Although the jury found that "JCI failed to reasonably notify Jay in accordance with § 2-607(3)," the district court concluded that JCI was entitled to recover damages for overcharges occurring after notice was given. 1 J.A. at 362 (Dist. Ct. Mem. & Order at 10).

Jay argues that the district court should have dismissed all of JCI's claims, because the failure to provide reasonable notice prevents JCI from seeking "*any* remedy." Appellant Br. at 30. It is true, as Jay points out, that the Michigan Court of Appeals has broadly construed the term "any remedy." *Am. Bumper & Mfg. Co. v. Transtechnology Corp.*, 652 N.W.2d 252, 256-57 (Mich. Ct. App. 2002). However, the district court correctly found that JCI was entitled to recover damages for the post-notice overcharges for two reasons. First, the district court explained that U.C.C. § 2-607(3) only applies by its own terms "[w]here a tender has been accepted"; at the point at which JCI notified Jay of the overcharges, the goods in the subsequent installments had not yet been tendered or accepted. 1 J.A. at 362 (Dist. Ct. Mem. & Order at 10). Second, "because the sales between JCI and Jay were in the nature of installment contracts, each overcharge was a distinct breach and JCI

---

[7]Jay also argues that there was no breach of the installment agreement after February 1998 because the prices paid corresponded to the prices listed in the purchase orders. However, as discussed below in section D, there was evidence presented contradicting the terms of the purchase orders and establishing that the parties agreed to amortize the cost of the returnable packaging as a part of the VN127 contract.

[8]The corresponding Michigan statutory provision is Michigan Compiled Laws § 440.2612.

[9]The applicability and effect of § 440.2607(3) is discussed in further detail in section F.

was not required to give notice prior to the occurrence of the breach." 1 J.A. at 362 (Dist. Ct. Mem. & Order at 10).

### 3. Waiver

Finally, Jay claims that JCI "waived its alleged contract right to a lower price by promising and continuously paying to Jay its purchase order prices during [the time that the pedestals were shipped]." Appellant Br. at 35-36. Michigan Compiled Laws § 440.2208 (U.C.C. § 2-208) states:

> (1)  Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement.
>
> . . .
>
> (3)  Subject to the provisions of the next section on modification and waiver, such course of performance shall be relevant to show a waiver or modification of any term inconsistent with such course of performance.

JCI first responds that Jay waived this claim by failing to object to the lack of an appropriate jury instruction. JCI acknowledges that Jay requested a course-of-performance instruction that "included a passing reference to waiver," but states that "there was no objection to the failure to provide a substantive waiver instruction." Appellee Br. at 30 n.51. Jay's requested instruction, which was based on U.C.C. § 2-208, stated, "[t]he parties' course of performance is also relevant to show a waiver or modification of any term inconsistent with such course of performance." 2 J.A. at 638 (Jay's Revised Proposed Jury Instructions at 12). Contrary to JCI's arguments, Jay's requested instruction clearly raised the issue of waiver.

As to the merits of Jay's claim, JCI did not waive its rights regarding the packaging payments according to Michigan law. The Michigan Supreme Court has explained that "a waiver is a voluntary and intentional abandonment of a known right." *Quality Prods. & Concepts, Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 258 (Mich. 2003). Jay is correct in stating that a party's conduct can establish waiver; in fact, *Quality Products* acknowledges that a "course of conduct" can indicate a knowing waiver. *Id*. However, because Jay does not offer any evidence that JCI intentionally relinquished its rights, Jay's claim is without merit. Therefore, judgment as a matter of law based on waiver of the price contract term was not warranted.

Jay obviously cannot assert that JCI waived its rights under the contract after July 8, 2001, because JCI expressed its objection on that date. Rather, Jay argues that JCI's retraction of the alleged waiver was improper pursuant to Michigan Compiled Laws § 440.2209(5) (U.C.C. § 2-209).[10] Because JCI did not waive its rights as to the packaging charges, however, § 440.2209(5) is inapplicable. The district court correctly denied Jay's claim with regard to waiver.

---

[10]Section 440.2209(5) states:
A party who has made a waiver affecting an executory portion of the contract may retract the waiver by reasonable notification received by the other party that strict performance will be required of any term waived, unless the retraction would be unjust in view of a material change of position in reliance on the waiver.

### C. Jury Instructions and Verdict Form

#### 1. Jury instructions

Jay requested the following jury instruction:

Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement. The parties' course of performance is also relevant to show a waiver or modification of any term inconsistent with such course of performance.

2 J.A. at 638 (Jay's Revised Proposed Jury Instructions). The district court instructed the jury as follows:

Now, as to the packaging overcharge claim, it involves the assertion that JCI and Jay agreed that, one, Jay would ship VN front seat pedestals in returnable containers. Jay would initially purchase the containers and JCI would repay Jay for its purchase of the containers including interest through a temporary increase in the piece price for the parts, and two, JCI would pay Jay 1.62 per part for Jay's temporary use of expendable packaging until returnable packaging was available.

JCI has the burden of proving, one, that one or more of these agreements were formed, and two, that Jay breached one or more of these agreements. On this claim your answer to Part I Question 1 will be yes if you decide that JCI has proved each of these elements. On this claim your answer to Part I Question 1 will be no if you decide JCI has not proved one or more of these elements.

With regard to this claim, parties can enter into an agreement even though a particular term is not explicitly agreed to. In such a case the term can be established by the conduct of the parties. It is for you to decide in your answers to Part I Question and Part I Question 2 whether or not the parties by their actions came to such an agreement.

3 J.A. at 708-09 (Trial Tr. at 133-34).

"This court reviews a district court's refusal to give requested jury instructions under an abuse of discretion standard." *Hisrich v. Volvo Cars of N. Am., Inc.*, 226 F.3d 445, 449 (6th Cir. 2000) (internal quotation marks omitted). The refusal to give the requested instructions is error if: "(1) the omitted instructions are a correct statement of the law; (2) the instruction is not substantially covered by other delivered charges; (3) the failure to give the instruction impairs the requesting party's theory of the case." *Id.* (internal quotation marks omitted). "A judgment may be reversed only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *Id.* (internal quotation marks omitted).

Jay contends that each of these requirements for error is satisfied in this case. First, the requested instructions are based upon U.C.C. § 2-208 and are thus a correct statement of the law. Jay concedes that the instruction given did address the issue of the parties' conduct; however, Jay asserts that this instruction only demonstrated that conduct could indicate the existence of *additional* contractual terms rather than showing that "the parties did not agree to disputed terms." Appellant Br. at 41. Finally, Jay claims that the district court's failure to give the instruction "struck at the core of Jay's primary trial defense against the existence of an amortization agreement . . . . The jury was

not told that course of performance could show no agreement ever arose, could show modification of an agreement, or could show that a party had waived its contract rights." Appellant Br. at 41-42.

Jay's argument as to waiver is without merit due to the lack of evidence of JCI's intent, as discussed in the previous section. Because this court "will not reverse a decision on the basis of an erroneous jury instruction where the error is harmless," any possible error with regard to the issue of waiver is not grounds for reversal in this case. *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 822 (6th Cir. 2000). In addition, JCI points out that Jay was not impaired in its presentation of its theories; as Jay itself admitted, it "introduced a wealth of evidence tending to show that the parties' course of performance proved that an amortization agreement did not exist." Appellant Br. at 40. In *United States v. Jackson*, 347 F.3d 598, 607 (6th Cir. 2003), we stated, "the failure to give [the requested] instruction did not substantially impair [the] defense because the jury was already well aware of his theory of the case."[11] Because the instructions given were not "confusing, misleading, or prejudicial" to Jay, *Hisrich*, 226 F.3d at 449, the district court did not abuse its discretion in instructing the jury.

### 2. Verdict form

Jay also argues that the district court erred in refusing to use Jay's proposed verdict form, which contained the question, "[d]id Jay and JCI agree to an amortization contract for returnable containers?" 2 J.A. at 622 (Jay's Proposed Verdict Form). The verdict form given to the jury stated as follows:

> Did Jay breach the parties' agreement for the manufacture and sale of the three VN 127 front seat pedestals or any related agreement by continuing to charge JCI $1.62 per part after it began shipping the parts in returnable packaging and had been reimbursed for the cost including interest of the returnable packaging?

2 J.A. at 646 (Verdict). We review the content of verdict forms for an abuse of discretion. *Bills v. Aseltine*, 52 F.3d 596, 605 (6th Cir.), *cert. denied*, 516 U.S. 865 (1995).

Jay asserts that the verdict form "effectively assumed the existence of [the amortization] agreement." Appellant Br. at 44. However, "[w]e review jury charges as a whole, and will not find a cause for reversal unless it is likely the jury has been misled." *Piper v. Goodwin*, 20 F.3d 216, 221 (6th Cir. 1994). As set forth above, the district court clearly instructed the jury that JCI had the burden of proving the existence of an amortization agreement. There is therefore no basis to reverse the judgment of the district court on this issue.

### D. Parol Evidence

Jay argues that the district court erred in denying its motion in limine to exclude evidence contradicting the terms of the purchase order. "Michigan follows the general rule that does not permit extrinsic evidence to contradict the terms of a written contract that was intended by the parties to be a complete expression of their agreement." *CMI-Trading, Inc. v. Quantum Air, Inc.*, 98 F.3d 887, 891 (6th Cir. 1996). The statutory provision regarding parol evidence states as follows:

---

[11]JCI also correctly points out that the requested instruction itself does not address contract *formation*; rather, it states that the parties' conduct is "relevant to determine the *meaning* of the agreement." Appellee Br. at 43 (emphasis added). This undermines Jay's argument, described above, that it was impaired in its ability to disprove the existence of the amortization agreement by the instructions. JCI also argues that as to waiver, Jay was not entitled to this instruction because it never presented this issue to the jury. Jay does not point to anything in the record to rebut this argument.

Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented

(a)   by course of dealing or usage of trade (section 1205) or by course of performance (section 2208); and

(b)   by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

MICH. COMP. LAWS § 440.2202 (U.C.C. § 2-202) (footnotes omitted).

JCI asserts that Jay did not raise this issue again after the district court's denial of the motion in limine, either by objecting to the introduction of evidence, requesting a jury instruction, or by filing a motion for judgment as a matter of law; Jay does not respond to these assertions nor does the record reveal that JCI is incorrect. We have held that "a motion in limine does not preserve evidentiary questions for appeal." *United States v. Kelly*, 204 F.3d 652, 655 (6th Cir.), *cert. denied*, 530 U.S. 1268 (2000). We thus review this asserted evidentiary error for plain error, rather than for an abuse of discretion. *Id.* "[B]efore [we] can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'" *Johnson v. United States*, 520 U.S. 461, 466-67 (third alteration in original) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). "If all three conditions are met, [we] may then exercise [our] discretion to notice a forfeited error, but only if (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* at 467 (third alteration in original) (internal quotation marks omitted) (quoting *Olano*, 507 U.S. at 732).

Jay's arguments would fail under either the plain-error or abuse-of-discretion standard of review. Jay asserts that because the purchase orders were "confirmatory memoranda" pursuant to U.C.C. § 2-201[12] and 2-202, the parol evidence was improperly admitted. Appellant Br. at 46-49. The Supreme Court of Michigan has stated, "[w]hen the parties did not regard their purchase order as the final expression of their agreement, parol evidence is admissible to establish what that agreement was." *Baker v. DEC Int'l*, 580 N.W.2d 894, 899 n.18 (Mich. 1998) (internal quotation marks omitted). Thus, the existence of the purchase orders alone cannot trigger the parol evidence rule.[13]

Jay and JCI dispute whether the purchase orders adequately reflect the agreement that existed between them. "Extrinsic evidence offered to show that a contract was not intended to be a complete expression of an agreement on the matters covered must be presented to the jury so that the jury may determine whether the contract was, in fact, intended to be a complete [expression of the parties'] agreement." *CMI-Trading*, 98 F.3d at 891. The district court properly allowed JCI to present parol evidence in this case.

---

[12]U.C.C. § 2-201(1) states, "a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties . . . ."

[13]Jay argues that according to U.C.C. § 2-201, the parties' final expression may be "*either* 1) terms with respect to which confirmatory memoranda of the parties agree *or* 2) terms which are otherwise set forth in a writing intended by the parties as a final expression of their agreement." Third Appellant Br. at 23. However, Jay simply assumes that the purchase orders alone are confirmatory memoranda, when there is an obvious dispute as to whether or not other documents (such as the June 4 letter) are controlling.

## E.  Evidence of Amortization Agreement

Jay requested judgment as a matter of law on the basis that there was insufficient evidence to support a finding of an amortization agreement, and the district court denied this motion.  The district court explained that "[e]ntering judgment as a matter of law following the close of the proofs in favor of JCI would have been erroneous in light of the record; clearly, these issues were for the trier of fact."  1 J.A. at 365 (Dist. Ct. Mem. & Order at 13).  This determination is supported by *Gage Products Co. v. Henkel Corp.*, 393 F.3d 629, 642 (6th Cir. 2004), in which we held that the issue of whether the parties had formed a contract should have been submitted to the trier of fact. We affirm the denial of Jay's motion for judgment as a matter of law on this basis.

## F.  Pre-Notice Packaging Charges (Cross-Appeal, No. 05-1879)

Because the jury determined that JCI did not give notice of the overcharges within a reasonable amount of time, the district court found that JCI was barred from recovering the overcharges prior to July 8, 2001 pursuant to U.C.C. § 2-607(3).  JCI argues that the district court erred in reaching this conclusion.  The district court relied upon *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 151-52 (6th Cir. 1983), a case in which we addressed the question of whether notice is required pursuant to § 2-607(3) for breaches regarding time or price.  *Roth Steel* stated that both the "clear language" of the statute and the underlying policies[14] support a requirement of "notice of breach when performance does not conform to time or price terms of the contract."  *Id.* at 152.

JCI asserts that the Michigan common law of mistaken payment applies,[15] rather than § 2-607(3).  Notwithstanding JCI's various arguments to the contrary, the district court correctly followed *Roth Steel*.  "By its terms, U.C.C. section 2-607(3) applies to this case because this is a situation '[w]here a tender [of goods . . .] has been accepted.'"  *Aqualon Co. v. MAC Equip., Inc.*, 149 F.3d 262, 265 (4th Cir. 1998) (alteration in original) (citation omitted).  We believe that *Roth Steel* is controlling as to this issue and that JCI was required to notify Jay of the breach as to the price of the pedestals.  JCI argues that *Roth Steel* was based upon Ohio law and is inapplicable to Michigan.  As the district court pointed out, the Ohio statute at issue is identical to the Michigan statute, and we assume that Michigan courts would follow the same approach given the statute's plain language.  OHIO REV. CODE § 1302.65(C); MICH. COMP. LAWS § 440.2607(3).  Finally, JCI claims that the relevant language from *Roth Steel* is dicta; however, the *Roth Steel* court stated broadly that "the statute applies to *all* breaches."  *Roth Steel*, 705 F.2d at 152 (emphasis added).[16]

---

[14]*Roth Steel* described these policies as follows:

First, express notice opens the way for settlement through negotiation between all parties.  Second, proper notice minimizes the possibility of prejudice to the seller by giving him "ample opportunity to cure the defect, inspect the goods, investigate the claim or do whatever may be necessary to properly defend himself or minimize his damages while the facts are fresh in the minds of the parties."

*Roth Steel*, 705 F.2d at 152 (internal quotation marks omitted).

[15]The Michigan Supreme Court has explained that:

The rule is general that money paid under a mistake of material facts may be recovered back, although there was negligence on the part of the person making the payment; but this rule is subject to the qualification that the payment cannot be recalled when the situation of the party receiving the money has been changed in consequence of the payment, and it would be inequitable to allow a recovery.

*Gen. Motors Corp. v. Enter. Heat & Power Co.*, 86 N.W.2d 257, 260 (Mich. 1957) (quoting *Walker v. Conant*, 31 N.W. 786, 787 (Mich. 1887)).

[16]JCI also asserts that § 2-607 has no effect on a "buyer's obligation to pay the contract price" because the code does not specifically address the "contract rate."  Appellee Br. at 48.  Rather, JCI argues that § 2-607(2)-(3) "address the rights the buyer retains, notwithstanding its obligation to pay."  Appellee Br. at 48.  JCI cites no support for this argument.

The district court also correctly rejected JCI's argument that notice is unnecessary if Jay had actual knowledge of the overcharges. In *Standard Alliance Industries, Inc. v. Black Clawson Co.*, 587 F.2d 813, 825 (6th Cir. 1978), *cert. denied*, 441 U.S. 923 (1979), we held that § 2-607 "mandate[s] notice regardless [of] whether either or both parties had actual knowledge of breach." *Accord Aqualon*, 149 F.3d at 266-67; *E. Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 973 (5th Cir. 1976); *but see Arcor, Inc. v. Textron, Inc.*, 960 F.2d 710, 715 (7th Cir. 1992) (holding that a buyer need only notify the seller that the transaction is "troublesome") (internal quotation marks omitted). JCI attempts to distinguish *Standard Alliance* by describing it as a "non-conforming goods case"; JCI asserts that there is no need to require a buyer to inform the seller of the fact of breach if the breach is based upon overcharges because no buyer would choose to pay such overcharges. Appellee Br. at 51. However, "Section 2-607 expressly requires notice of 'any' breach." *Standard Alliance*, 587 F.2d at 825. *Standard Alliance* also emphasized the underlying policy concerns for providing notice, which are noted above and fully applicable to this case. *Id.* at 826.

Finally, JCI argues that it should not have been prevented from recovering the overcharges on the basis of unjust enrichment. The district court explained that "[t]he jury found that an express contract governs the parties' relationship. This finding precludes implying a contract under quasi-contract theories." 1 J.A. at 363 (Dist. Ct. Order & Mem. at 11) (citing *H.J. Tucker & Assocs., Inc. v. Allied Chucker & Eng'g Co.*, 595 N.W.2d 176, 188 (Mich. Ct. App. 1999)). In order to grant relief on the basis of unjust enrichment, the court must imply a contract between the parties; "[h]owever, a contract will be implied only if there is no express contract covering the same subject matter." *Belle Isle Grill Corp. v. City of Detroit*, 666 N.W.2d 271, 280 (Mich. Ct. App. 2003). As the contract in this case clearly covered the subject matter of the litigation, namely the proper amount that JCI should have paid Jay, it is impermissible to imply a contract between JCI and Jay. We affirm the district court on this issue.

## G.  Ongoing Packaging Charge (Cross-Appeal, No. 05-1879)

The jury concluded that Jay was only required to reduce its prices by $1.26 after "it received full payment from JCI for the returnable packaging," 2 J.A. at 646 (Verdict); this "allow[ed] Jay to keep $0.36 per piece from the time amortization was complete until the parties' contract on the VN program ends," Appellee Br. at 55-56. In its second claim on cross-appeal, JCI asserts that "[t]his result is unsupported by the record and erroneous as a matter of law." Appellee Br. at 56.

JCI's argument is premised upon the fact that the $1.62 charge was limited to the expendable packaging; once the parties switched to returnable packaging, JCI contends that this $1.62 charge should have been replaced by the $1.26 charge provided for in the amortization agreement and that the $1.26 charge should have been eliminated once amortization was completed. Jay responds that there was an implicit understanding that $1.26 would be reduced from the price in place at the time (which was the price including the $1.62 charge), so that Jay would keep the difference ($0.36) for "handling, SG&A[17] and profit." Third Appellant Br. at 31. Gensheimer testified that Jay expected to maintain some profit, though he admitted on cross-examination that the documents themselves do not reflect such an understanding. In addition to Gensheimer's testimony, Jay also points to the fact that "JCI's purchase orders included the $1.62 at the time of Jay's amortization proposals." Third Appellant Br. at 32.

In reviewing the denial of JCI's motion for judgment as a matter of law, the evidence must be taken in the light most favorable to Jay. *Tisdale*, 415 F.3d at 527. Although there is no documentation to support Gensheimer's testimony, the jury could have believed that there was an

---

[17]"SG&A" refers to "Sales, General Overhead, and Administration." Third Appellant Br. at 31 n.13.

implicit agreement that the $1.26 was to be reduced from the existing packaging charge of $1.62. The district court correctly determined that there was "sufficient evidence to go to the jury on the issue of the []36 cent reduction." 1 J.A. at 365 (Dist. Ct. Mem. & Order at 13).

### III. CONCLUSION

For the reasons discussed above, we **AFFIRM** the judgment of the district court on each of the claims presented.