NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0456n.06

No. 14-6106

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| SHERRY J. CAPPS, CHARLOTTE P. DELGAICCO, individually and as executor of the estate of Richard A. Pierce, and BRIAN D. PIERCE, | ) ) ) ) ) | **FILED** Jun 17, 2015 DEBORAH S. HUNT, Clerk |
| Plaintiffs-Appellants, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| v. | ) ) | |
| CREMATION OPTIONS, INC., | ) ) | |
| Defendant-Appellee. | ) | |

BEFORE: DAUGHTREY, GIBBONS, and GRIFFIN, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. Rhonda Barnes, Steven Crumley, and Joseph Crumley, who were originally defendants in this case, arranged for defendant Cremation Options, Inc., to cremate of the remains of their deceased step-father, Richard A. Pierce, by representing to Cremation Options that they were Pierce's only children and, therefore, had the authority to permit cremation. In fact, Pierce had three additional, biological children—plaintiffs Sherry Capps, Charlotte DelGaicco, and Brian Pierce—who were religiously and culturally opposed to cremation. They were not informed of the contract between Cremation Options and the other three defendants until after the decedent was cremated. They then brought suit against Cremation Options, their step-siblings, additional family members, and East Tennessee Cremation Company, the facility that actually carried out the cremation under a

subcontract with Cremation Options.  All defendants except Cremation Options were eventually dropped from suit at one time or another in district court. The claims against the remaining defendant included intentional infliction of emotional distress, negligent infliction of emotional distress, trespass upon the right to possess a body for decent burial, and conversion of cremated remains.

Cremation Options moved for summary judgment on all the claims against it, arguing, first, that the decedent's advance directive authorized cremation and, second, that Tennessee Code Annotated §§ 62-5-707 and -708 absolved it of all liability because it reasonably relied on the representations of Rhonda Barnes and Steven and Joseph Crumley in proceeding with the cremation.  The district court granted summary judgment to Cremation Options solely on the basis of §§ 62-5-707 and -708.  The plaintiffs now appeal this ruling, on the ground that those statutes were enacted *after* Cremation Options's allegedly tortious conduct occurred and should not be applied retroactively.  The plaintiffs, however, did not raise this issue in the district court. We nevertheless find it necessary to vacate the district court's grant of summary judgment to Cremation Options and remand on the plaintiffs' claims against that defendant.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 13, 2011, while terminally ill, Richard A. Pierce appointed former defendant Rhonda Barnes as his health-care agent, authorizing her to make all health-care decisions on his behalf if he became unable to do so.  He also signed an "advance care plan" form, again designating Rhonda Barnes as his health-care agent.  On the form, under a section entitled "[o]ther instructions, such as burial arrangements, hospice care, etc.," the word "creamation" (*sic*) was written.

Pierce died ten days later, on October 23, 2011. The next day, Jarrett Vance, an employee of defendant Cremation Options, Inc., met with Barnes and Steven and Joseph Crumley. Barnes identified herself to Vance as Pierce's daughter; the Crumleys identified themselves as Pierce's sons. When Vance asked whether Pierce had any other children, the three of them said that he did not. In signing the "cremation and disposition authorization" form provided by Cremation Options, they averred that they were legally authorized to arrange for the cremation, processing, and final disposition of Pierce's remains; that any other adult children of the decedent had been notified of his death and none had expressed an objection to cremation; and that they had the legal right to authorize Pierce's cremation and agreed to hold Cremation Options harmless from any liability on account of their authorization of Pierce's cremation, identification, and final disposition.

The decedent's remains were cremated on October 24, in accordance with a cremation permit obtained from the state. Despite the representations of Barnes and the Crumleys, they were not Richard Pierce's only children. They were, in fact, his step-children by a second marriage; he also had three biological children—plaintiffs Sherry Capps, Charlotte DelGaicco, and Brian Pierce—by an earlier marriage. Because the plaintiffs purportedly had cultural and religious aversions to cremation, they brought suit against various defendants, including their step-siblings,[1] for intentional infliction of emotional distress, negligent infliction of emotional distress, trespass upon the right to possess a body for decent burial, and conversion of cremated remains,[2] all in violation of Tennessee law.

---

[1] All defendants except Cremation Options were voluntarily dismissed from suit after summary judgment was granted but before the notice of appeal was filed, undoubtedly so that the summary judgment in Cremation Options favor would constitute a final, appealable judgment.

[2] Cremation Options released half of the resulting ashes to Rhonda Barnes and the other half to plaintiff Charlotte DelGaicco. Despite her acknowledgement of receipt, DelGaicco later claimed title to all of the decedent's remains.

Cremation Options moved for summary judgment in the district court, in part on the ground that, under Tennessee Code Annotated §§ 62-5-707 and -708, it was entitled to rely on the representations of Barnes and the Crumleys, who were the only children of Richard A. Pierce, thus relieving Cremation Options of any liability in conjunction with the cremation of his remains. The district court agreed with this argument and granted summary judgment to Cremation Options. The plaintiffs now appeal the judgment in favor of Cremation Options on their claims of intentional infliction of emotional distress, negligent infliction of emotional distress, and trespass upon the right to possess a body for decent burial, but not for conversion of cremated remains.

## DISCUSSION

The plaintiffs raise only one argument on appeal, contending that the district court erred in granting summary judgment to Cremation Options on the basis of Tennessee Code Annotated §§ 62-5-707 and -708 because they went into effect only after the cremation took place. However, the plaintiffs did not make this argument in the district court, either in opposition to the defendant's motion for summary judgment, in which the statutory provisions were first asserted by Cremation Options as a defense to liability, or in a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e). Conceding that the mistake was not brought to the district court's attention, they now ask that we review it for "plain error."

Before we can correct an error not raised at trial, we must find that it is "plain" and that it "affects substantial rights." *See Johnson Controls, Inc. v. Jay Industries, Inc.*, 459 F.3d 717, 728 (6th Cir. 2006) (quoting *Johnson v. United States*, 520 U.S. 461, 466-67 (1997)). If those conditions are met, we have the discretion to review the error, but only if it "seriously affects the

fairness, integrity, or public reputation of [the] judicial proceedings." *Id.* (internal quotation marks omitted) (quoting *Johnson*, 520 U.S. at 467).

The district court relied on Tennessee Code Annotated §§ 62-5-707 and -708 in finding that Cremation Options could not be held liable for wrongful disposition of the decedent's remains in this case. Section 62-5-707 deems "any person signing a "funeral service agreement" that directs the disposition of remains as warranting the truthfulness of any facts set forth in the authorization, including that person's authority to order such a disposition. Tenn. Code Ann. § 62-5-707. It also provides a funeral establishment with the right to rely on such authorization and "to carry out the instructions of the person whom [it] reasonably believes holds the right of disposition". Further, under § 62-5-707 a funeral establishment is "not responsible for contacting or independently investigating the existence of any next-of-kin or relative of the decedent". *Id.* Section 62-5-708 absolves of criminal and civil liability any "funeral establishment or funeral director" who reasonably relies in good faith on the instructions of a person claiming the right of disposition and carries out that person's instructions in disposing of the remains, unless the establishment or director knew or had reason to know that that person did not have the right of disposition. Tenn. Code Ann. § 62-5-708. The district court reasonably, but incorrectly, applied these statutory provisions to the facts presented in support of Cremation Options's motion for summary judgment.

There can be little doubt about the existence of the error here. Tennessee Code Annotated §§ 62-5-707 and -708 were not effective until April 25, 2012, some six months after Richard Pierce's remains were cremated on October 24, 2011. Nothing within either section provides for retroactive application, and Cremation Options does not argue that either statute should be construed as having retroactive effect. Nor, importantly, did the district court indicate

that it was retroactively applying §§ 62-5-707 and -708 to plaintiffs' claims against Cremation Options. In this situation, we can reasonably assume that the district court was unaware that the statutes were enacted after the relevant conduct in this case occurred and that its decision was not based on a knowing retroactive application of the statutes.[3]

Despite the inadvertence of the error, it is nevertheless "plain," and it clearly "affects substantial rights" in the controversy at hand, principally who had the right to control disposition of the decedent's remains. At the time of Richard Pierce's death, that authority was not governed by Tennessee statute but had devolved largely as a matter of common law. The question had been addressed in the Tennessee Supreme Court's then-recent opinion in *Seals v. H & F, Inc.*, 301 S.W.3d 237 (Tenn. 2010), a case like this one, in which the authority to direct a cremation was challenged after the cremation was completed. The scheme adopted by the *Seals* court plowed new ground, based as it was on analogy to the priorities established by the Uniform Anatomical Gift Act, as amended, Tennessee Code Annotated §§ 68-30-101 to -120 (Supp. 2009), a solution first developed by the Tennessee Court of Appeals in *Akers v. Buckner-Rush Enterprises, Inc.,* 270 S.W.3d 67, 73 (Tenn. Ct. App. 2007). The Tennessee Supreme Court also concluded that Tennessee Code Annotated § 62-5-511 controlled the question of liability for a cremation based on the apparent authority of someone *without* a superior right to control disposition of a decedent's remains. *Seals*, 301 S.W.3d at 248-49. That statute provides a safe harbor for the "operator of a crematory facility" who performs a cremation "in accordance with the instructions set forth by the decedent or an heir or personal representative of the decedent,"

---

[3] If the district court did intend to retroactively apply §§ 62-5-707 and -708, its decision to do so was error. "There is a 'presumption against retroactive legislation [that] is deeply rooted in our jurisprudence. . . . The principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.'" *Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 946 (1997) (quoting *Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994)). Absent an express command that a statute operates retroactively, the statute will be applied prospectively only. *Glover v. Johnson*, 138 F.3d 229, 249 (6th Cir. 1998).

unless the operator's action was undertaken "with malicious purpose, in bad faith or in a wanton or reckless manner." Tenn. Code Ann. § 62-5-511(a).

Unfortunately for Cremation Options, it clearly would have qualified as a "funeral establishment or funeral director" for purposes of the safe-harbor provisions in §§ 62-5-707 and 708, had those statutes been in effect in October 2011, but it would *not* qualify as the "operator of a crematory facility" for purposes of the safe harbor provided in § 62-5-511. Pointing to Tennessee Code Annotated § 62-5-507, the *Seals* court held that "the General Assembly intended 'operator' to refer to the party *actually* performing the cremations," meaning that H & F Inc., the funeral director in *Seals*, did not qualify for protection from liability because it had subcontracted out the actual cremation process to a separate business entity. *Seals*, 301 S.W.3d at 252 (emphasis added) ("Generally, however, a funeral home that does not perform cremations, but merely makes arrangements for cremations to be carried out by another company, is not itself the operator of a crematory facility and, in consequence, cannot rely on the section 62–5–511 safe harbor."). Cremation Options, like H & F Inc., had contracted with another company to perform the actual cremation of the decedent's remains in this case and, thus, could not have defended on the basis of § 62-5-511.

Without the availability of a safe harbor, Cremation Options is left to look to *Seals*, 301 S.W. 3d at 242, "to ascertain who has control over the disposition of remains." The Tennessee Supreme Court in *Seals* held that:

> *[T]he decedent, as a general rule, has the primary entitlement to expressly elect the method of disposal of his or her body, or, in the alternative, to designate an individual to elect the method of disposal*; if the decedent does not do so, however, the legal right to direct the disposal of remains descends to the following parties, in order of priority: (1) the spouse of the decedent; (2) adult children of the decedent; (3) parents of the decedent; (4) adult siblings of the decedent; (5) adult grandchildren of the decedent; (6) grandparents of the

decedent; and (7) an adult who has exhibited special care and concern for the decedent.

*Id*. (emphasis added).

Because the district court in this case rested its decision in the defendant's favor entirely on inapplicable Tennessee Code provisions, the court did not rule on the validity of the advance directive purportedly executed post-mortem by Richard A. Pierce, in which he ostensibly designated cremation as "the method of disposition of his body" and, in the alternative, also purported "to designate [Rhonda Barnes] to elect the method of disposal." We take this to mean that the court's error was not only plain and in derogation of rights, but also that the application of plainly inapplicable statutory provisions could "seriously affect [ ] the fairness, integrity, and public reputation of the judicial proceedings" in this case. *Johnson Controls*, 459 F.3d at 728. We therefore find it necessary to vacate the order of summary judgment and remand the case to the district court for further proceedings, including reconsideration of the plaintiffs' request to reopen formal discovery.

## CONCLUSION

For the reasons set out above, we REVERSE the district court's judgment and REMAND the case for further proceedings.